# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA NIXON, individually, and on behalf of all others similarly situated,<br>　　　Plaintiff,<br><br>v.<br><br>GRANDE COSMETICS, LLC,<br>　　　Defendant | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Brenda Nixon brings this class action on behalf of herself and all others similarly situated against Grande Cosmetics, LLC ("Grande Cosmetics").  Plaintiff alleges the following upon personal knowledge as to herself and as to all other matters upon information and belief.

## I.      INTRODUCTION

1.       This class action arises from the false, misleading, and deceptive sale of dangerous, unapproved beauty products that are, in reality, unapproved, dangerous drugs.

2.       Defendant Grande Cosmetics manufactures and sells beauty products.  Among its products are GrandeLASH-MD Lash Enhancing Serum, GrandeBROW Brow Enhancing Serum, and GrandeHAIR Enhancement Serum (hereafter, the "Enhancement Serums" or  the "Products"). Grande Cosmetics deceptively sells the Enhancement Serums, without a prescription, as cosmetics (not as drugs) or so-called "serums," with no identified active drug ingredient, and with no warning of serious side effects.

3.       The Enhancement Serums, however, contain the active ingredient isopropyl cloprostenate ("ICP"), which is in the same class of compounds as the active ingredient found in

1

prescription drugs that grows eyelashes, like Latisse®—which the FDA has approved for use only under the supervision of a physician due to the possible adverse effects associated with its active ingredient.

4.     The United States Food and Drug Administration ("FDA") has warned manufacturers that ICP is associated with potential serious side effects, and has further warned that ICP lash and brow products are not safe for use except under supervision of a licensed physician.[1]

5.     Because the Enhancement Serums are drugs within the meaning of the N.J. Stat. § 24:1-1, *et seq.*, the state analogue to the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, Grande Cosmetics was required to seek regulatory approval before selling the Enhancement Serums to consumers.  Grande Cosmetics sought no such approval, and instead concocted a scheme to take the Enhancement Serums straight to market by selling them as cosmetics instead of prescription drugs.  Even though the Enhancement Serums are unapproved drugs that should never have been available for sale to consumers, Grande Cosmetics unlawfully sold hundreds of thousands of units of the Enhancement Serums to consumers at approximately $65-$125 each.

6.     Plaintiff is one of many consumers who purchased the Enhancement Serums without knowing that they were new, unapproved drugs with potentially serious side effects not reasonably expected from a cosmetic.  In Plaintiff's case, the drastic (and undisclosed) side effects included physical deterioration of her eyelids, swelling, severe pain, and blurred vision.

7.     Plaintiff brings this action for economic damages and injunctive relief (not for physical injuries) on behalf of all persons who paid for Grande Cosmetics' dangerous, unapproved

---

[1] *See, e.g.*, Apr. 18, 2011 FDA Letter (Ex. A hereto).

drug Products.  Grande Cosmetics' wrongful conduct constitutes (i) a violation of the New Jersey

Consumer Fraud Act ("NJCFA"), N.J. Stat. § 56:8-1, *et seq.* (and other states', analogous non-

conflicting consumer protection laws), (ii) fraud (affirmative misrepresentation and omission),

(iii) negligent misrepresentation and omission, (iv) breach of express warranty, (v) breach of

implied warranty, (vi) negligence, and (vii) unjust enrichment.

## II. <u>PARTIES</u>

8. Plaintiff Brenda Nixon is and was at all pertinent times a citizen of the state of New

Jersey.  Plaintiff purchased GrandeLASH-MD Lash Enhancing Serum in June 2021, and

personally used it in July 2021.  Here are pictures of the product's packaging:



 

9.      Plaintiff observed the packaging, labeling, and advertisements for the Enhancement

Serums.  None of these materials properly disclosed the true facts regarding GrandeLASH-MD

and its ingredients.  Had they done so, Plaintiff would not have purchased GrandeLASH-MD.

Plaintiff reasonably understood the marketing of GrandeLASH-MD to mean or imply that the sale

of GrandeLASH-MD is lawful, and that she was purchasing a legally saleable product, not an

illegal, unapproved new drug product that contained active drug ingredients and/or ingredients

known to cause (undisclosed) adverse effects.  Had she been aware of this, she would not have

purchased the product.

10.      Plaintiff ceased using GrandeLASH-MD when she developed a severe reaction to

its use that caused severe swelling and pain, impaired her eyelids, and blurred her vision, some of

which is reflected in the below pictures:



11.     Defendant Grande Cosmetics, LLC is a cosmetics company domiciled and headquartered in Valhalla, New York.   On information and belief, each member of Grande Cosmetics is a citizen of New York, and none are citizens of New Jersey.   Grande Cosmetics markets and sells the Enhancement Serums directly through its website, as well as through popular retailers.

**III.     JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate. There are well over 100 members of the proposed Class that are known to exist. Complete diversity exists between Plaintiff (a citizen of New Jersey) and Grande Cosmetics (domiciled and headquartered in New York, and no members, on information and belief, are citizens of New Jersey).

13.     This Court has personal jurisdiction over Grande Cosmetics because Grande Cosmetics conducts substantial business in this District and in the State of New Jersey through its sale of products directly to New Jersey consumers through its website and also through its New Jersey-based retailers or website viewable in New Jersey. In addition, Plaintiff and  other class members have suffered injury as a result of Grande Cosmetics' acts in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV.     COMMON ALLEGATIONS

15.     The Enhancement Serums are unapproved new drugs because the overall circumstances of Grande Cosmetics' sale of Enhancement Serums demonstrate that Grande Cosmetics' objective intent in selling the Enhancement Serums was to affect the structure and function of the body by growing hair.

16.     Grande Cosmetics' business practices violate N.J. Stat. § 24:1-1, *et seq.*, the state analogue to the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, which prohibits the sale of any new drug or misbranded product absent preapproval.

17.     Any product considered a new drug that is sold without an approved new drug application ("NDA") is misbranded for purposes of New Jersey law and other states' analogous laws.  "A substance is a drug if it is intended to affect the structure or any function of the body of man . . . ." N.J. Stat. § 24:1-1(e).

18.     Under 21 C.F.R. § 310.527(b), incorporated into New Jersey (and other states') law, any over-the-counter drug purportedly intended to grow hair is a new drug per se for purposes of the FDCA, and thus also for New Jersey law purposes (and for other analogous state laws' purposes).

6

19.     The Enhancement Serums are also "misbranded" drugs under various provisions of New Jersey law (and other states' analogous laws), insofar as the Products' labeling is "misleading" and "fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article[.]"  N.J. Stat. § 24:1-1(m). For instance, the Enhancement Serums' labeling does not disclose all significant safety concerns and/or fails to disclose that it is a drug, and is a new drug sold without an approved new drug application; does not bear the established name and quantity of each active ingredient; fails to include in all advertising materials a summary of all side effects and contraindications; and does not bear adequate warnings as to unsafe dosages or methods or duration of administration or application, because it may be dangerous to health when used in the suggested frequency, duration, or dosage.

20.     Because the Enhancement Serums are "new drugs" sold without approved new drug applications, and because they are misbranded drugs, the Enhancement Serums are sold illegally. The foregoing misbranding is misleading to reasonable consumers because by failing to, for example, identify an active ingredient to summarize all side effects deceives consumers into believing that it is a safe cosmetic with no active drug ingredient associated with serious side effects.  (And even if they are not new drugs—which they are—the Products' labeling remains fraudulent, deceptive, and misleading).

21.     For example, in a similar context where a manufacturer was making lash and brow products with ICP the FDA explained that similar "appearance" claims that Grande Cosmetics makes here were misleading "because their labeling makes misleading statements regarding the product's safety and fails to reveal material facts with respect to consequences that may result from

the use of the product."  The FDA went on to warn that ICP lash and brow products "are not safe for use except under supervision of a practitioner licensed to administer them."[2]

22.     The FDA further explained that: "'RapidLash' and 'NeuLash' are adulterated cosmetics under section 601(a) because they bear or contain a deleterious substance that may render them injurious to users under the conditions of use prescribed in their labeling. Specifically, 'RapidLash' and 'NeuLash' contain isopropyl cloprostenate which, under the conditions of use prescribed in the labeling, may cause the following injuries: ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy.  In addition, as mentioned above, prostaglandin analogs for ophthalmic use are currently classified as Pregnancy Class C; women of childbearing age are considered at risk for injury."[3]

23.     The presence of ICP along with the marketing of the Enhancement Serums confirm that they are drugs under New Jersey law, other states' analogous laws, and federal law. Isopropyl cloprostenate ("ICP") is a prostaglandin analog that grows hair by extending the length of the hair cycle.

24.     Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that Plaintiff's state law claims alleged herein do not seek to impose any obligations on Defendant, beyond what is already required of them.  Rather, the state law claims here seek to enforce state statutory and common law principles that are parallel to, and not addition to or pose an obstacle to, any obligations imposed on Defendants by federal law.

---

[2] *See* Apr. 18, 2011 FDA Ltr. (Ex. A hereto).
[3] *Id.*

25.     If ICP is present in a product and the marketing of the product contains "appearance claims," then the product is a drug under applicable law. All of the Enhancement Serums are drugs because they contain ICP and are marketed with the following "appearance claims."

26.     GrandeLASH-MD, which is labeled and marketed as a "Lash Enhancing Serum" that "promote[s] the appearance of naturally longer, thicker looking lashes," contains isopropyl cloprostenate.[4] GrandeBROW, which is labeled and marketed as a "Brow Enhancing Serum" that "promote[s] the appearance of fuller, bolder looking brows in just 6-8 weeks," contains isopropyl cloprostenate.[5] GrandeHAIR, which is labeled and marketed as a "Hair Enhancing Serum" "for fuller & healthier looking hair," contains isopropyl cloprostenate.[6]

27.     The presence of the prostaglandin analog, isopropyl cloprostenate, along with appearance claims like "enhancing," "promote the appearance of naturally longer, thicker looking lashes," "promote the appearance of fuller, bolder looking brows," and "for fuller & healthier looking hair," indicate that the Enhancement Serums are "intended to affect the structure and function of the body" and is a drug as defined by section 201(g)(1)(C) of the Act (21 U.S.C. § 321(g)(I)(C)), as incorporated by New Jersey law and other states' analogous laws.

28.     Although the marketing claims discussed above combined with the presence of ICP standing alone sufficiently demonstrate that the Enhancement Serums are new drugs, additional circumstances confirm that it was Grande Cosmetics' objective to sell ICP-containing Enhancement Serums to affect hair growth.

---

[4] *See, e.g.*, https://grandecosmetics.com/products/grandelash-md (last accessed Nov. 9, 2022).
[5] *See, e.g.*, https://grandecosmetics.com/products/grandebrow (last accessed Nov. 9, 2022).
[6] *See, e.g.*, https://grandecosmetics.com/products/grandehair-rejuvenation-serum (last accessed Nov. 9, 2022).

29.     Unlike cosmetics such as mascara that provide instant beautification benefits, the marketing of each of the Enhancement Serums indicates that those products take weeks if not months to work.

30.     The marketing of GrandeLASH-MD cites to a consumer study where, after 12 weeks, "94% saw healthier looking lashes," "91% saw longer looking lashes," and "97% saw more visible lashes." The instructions for "how to use" GrandeLASH-MD state that "[d]ue to the length of the lash cycle, apply every day for a full 3 months. After desired improvement is achieved, apply every other day for maintenance." Additionally, Grande Cosmetics markets GrandeLASH-MD with "before-and-after" pictures, which indicate noticeable eyelash growth after 12 weeks.[7]

31.     The marketing of GrandeBROW states that it "promote[s] the appearance of fuller, bolder looking brows in just 6-8 weeks, with full improvement in 4 months."[8]  The marketing cites to a 16 week consumer study where "100% saw fuller looking brows," "94% saw healthier looking brows, and 91% saw thicker looking brows." The instructions for "how to use" GrandeBROW state that "[d]ue to the length of the brow cycle, apply every day for a full 4 months. After desired improvement is achieved, apply every other day for maintenance." Grande Cosmetics markets GrandeBROW with "before and after" pictures, which indicate noticeable brow growth after 16 weeks.[9]

32.     The marketing for GrandeHAIR states that the "appearance of healthier, thicker looking hair" improves "in 8 weeks, with full improvement in 4 months." The marketing cites to a 16-week expert clinical grader evaluation where "97% saw improved hair thickness," and "97% saw less hair thinning." The instructions for "how to use" GrandeHAIR  states  that  droplets

---

[7] *See, e.g.*, https://grandecosmetics.com/products/grandelash-md (last accessed Nov. 9, 2022).
[8] *See, e.g.*, https://grandecosmetics.com/products/grandebrow (last accessed Nov. 9, 2022).
[9] *See, e.g.*, https://grandecosmetics.com/products/grandemascara (last accessed Nov. 9, 2022).

should be applied nightly until full improvement, and then every other day for maintenance. Grande Cosmetics markets GrandeHAIR with "before and after" pictures, which indicate noticeable hair growth.

33.     The ICP in the Enhancement Serums grow lashes, brows, and hair by extending the length of the hair cycle. Isopropyl cloprostenate is one of a class of chemicals known as prostaglandin analogs, which have long been used to reduce intraocular pressure in glaucoma patients. According to the Glaucoma Research Foundation, "prostaglandin analogs work by increasing the outflow of intraocular fluid from the eye."[10]  A well-known side effect of glaucoma treatments containing prostaglandin analogs is that they cause eyelash growth.

34.     In 2008, the FDA approved Latisse®, whose active ingredient, bimatoprost is a prostaglandin analog like ICP known for increasing eyelash hair length, thickness, and darkness in patients with hypotrichosis (or inadequacy) of the eyelashes.[11]  Latisse is classified as an ophthalmic drug and cannot be obtained without a prescription.[12]

35.     The FDA has found that, like the active ingredient in Latisse, the prostaglandin analog, isopropyl cloprostenate is "well known to have an effect on the structure or function of the body," and that, accordingly, products containing isopropyl cloprostenate "are drugs as defined by section 201(g)(1)(C) of the [Federal Food, Drug, and Cosmetic] Act (21 U.S.C. § 321(g)(l)(C))."[13]

36.     Because they are objectively intended to affect the structure or function of the body, as demonstrated by the fact that it contains isopropyl cloprostenate, and the fact that marketing

---

[10] Prostaglandin Analogs, https://www.glaucoma.org/treatment/medication-guide.php#prostaglandin_analogs  (last accessed Nov. 9, 2022).
[11] *See* Latisse Approval Letter (Dec. 24, 2008), *at* https://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022369s000_Approv.pdf.
[12] See  Latisse Full Prescribing Information (Mar. 2012), *at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/022369s005lbl.pdf.
[13] *Id.*

contains "appearance" claims like "longer looking," as well by these other circumstances surrounding their sale, Enhancement Serums qualify as drugs under New Jersey law, and other states' analogous laws.

37.     In marketing the Enhancement Serums, Grande Cosmetics materially omits and does not adequately disclose to consumers that they are sold illegally without proper government approval.

38.     By omitting this information, Grande Cosmetics actively conceals material facts and leads reasonable consumers to believe they are purchasing Products whose sale does  not violate federal and/or state law.  By marketing and selling the Enhancement Serums, Grande Cosmetics effectively represents to consumers that the Products are recognized as safe by the relevant regulatory bodies, and that they are legally saleable, when in reality, they are not.

39.     In addition to being drugs that are marketed and sold illegally, the Enhancement Serums contain the prostaglandin isopropyl cloprostenate, which is associated with serious adverse effects. Specifically, the FDA has found that isopropyl cloprostenate may cause side effects to the eye including, but not limited to, ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy.

40.     In marketing and selling the Enhancement Serums, Grande Cosmetics materially omits and does not adequately disclose to consumers that isopropyl cloprostenate is known to cause eye-related diseases like hyperemia, macular edema, ocular inflammation, and the lowering of intraocular pressure. Grande Cosmetics also materially omits that when prostaglandin analogs, like ICP and bimatoprost, are applied to areas near the face, they can cause excess hair growth outside the treatment area, for instance on the cheek. Grande Cosmetics further fails to mention that ICP can cause clumps of hair, brows, and lashes to completely fall out instead of grow.

41.     Grande Cosmetics lists amino acids, hyaluronic acid, and vitamin E as "key ingredients" in GrandeLASH-MD and GrandeBROW,[14] but neglects to mention that it is the Products' active drug ingredient isopropyl cloprostenate that causes hair growth. Similarly, Grande Cosmetics lists Procapil, ginkgo, and flower extracts as "key ingredients," when in fact, it is the drug ingredient isopropyl cloprostenate that causes hair growth. Reasonable consumers want to understand whether products have active ingredients, and the effect that they may have-especially when the Product is applied and kept on at night around the eye and face.

42.     Furthermore, numerous consumers have complained online that GrandeLASH-MD has caused side effects including, among other things, burning, itching, redness, discoloration, swelling, styes, severe dry eye, eyelash fallout, and drooping eyelids.  For example:

a.     "I only used GrandeLash for a week and after the first use I experienced eyelid redness and bloodshot eyes. I figured it was just a first-time irritation thing, but had to use concealer to cover the eyelid redness. The next day it was worse. My eyelids were beginning to look dark brown/purple from the lash line to the eyebrow; darkest at the crease. I kept using the serum for the next 4 days, hoping it was just because I wasn't getting enough sleep that my eyes looked so dark, like I had been  punched. I went to bed early for the next week to try to get 8+ hours of sleep, hydrated a ton and used a vitamin C eye cream, but I looked just as bad; kind of sickly honestly. Finally I looked up eyelid discoloration with GrandeLash and discontinued use that

---

[14] Ingredients, GrandeLASH-MD Lash Enhancing Serum, *at* https://grandecosmetics.com/products/grandelash-md (last accessed Nov. 9, 2022).

day. As quickly as the next morning I noticed a difference, and by the following day the discoloration was totally gone."[15]

b. "Ouch! I tried this on one eye as a test and OMG it stings like crazy. I did not dare to open my eye, so I put a sleeping mask on to keep it shut."[16]

c. "Don't know if this works? I am highly allergic to something in this. My eyeballs were red immediately after use. Tried a few more days and just got worse."[17]

d. "This lash serum burned my eyes horribly and I woke up the next day with extremely bloodshot eyes and swollen lids."[18]

e. "I did 12 weeks of this and it did nothing for me but cause dark circles (Latisse did the same for me but actually worked)[,] irritation, and a couple of styes."[19]

f. "I just had to see an ophthalmologist as the colors in my right eye have started to bleed together. I have green eyes (green inner iris, with deep blue outer iris), and the bleu part of my eye is getting thicker on one side and almost bleeding into my inner iris, towards my pupil. It is quite noticeable to me, as my eyes are no longer symmetrical and one eye appears darker than the other. I've been using the Grande

---

[15] BellaByrne, Sephora Community (Aug. 2021), *at* https://community.sephora.com/t5/Everything-Eyes/GrandeLASH-sunken-eyes/m-p/5921011#feedback-success.

[16] Yvetteski Review, *at* https://www.makeupalley.com/product/showreview.asp/ItemId=201537/Grande-Cosmetics-GrandeLASH-MD-Lash-Enhancing-Serum/Unlisted-Brand/Lash-Treatments.

[17] AngelaBrooke Review, *at* https://www.makeupalley.com/product/showreview.asp/ItemId=201537/Grande-Cosmetics-GrandeLASH-MD-Lash-Enhancing-Serum/Unlisted-Brand/Lash-Treatments.

[18] Michelle R. Review (May 9, 2021), *at* https://grandecosmetics.com/collections/lash-serum/products/grandelash-md.

[19] Penny Review, Sephora (Apr. 22, 2020), *at* https://www.sephora.com/product/grandlash-tm-md-lash-enhancing-serum-P419219?skuId=1923275&icid2=skugrid:p419219.

Lash-MD Lash Enhancing Serum for a few months now, so only just connecting the dots."[20]

43.     Consumers have also complained that GrandeBROW has caused side effects including loss of brow hairs, discoloration, sunken eyes, and change of iris color. For example:

   a.   "This product caused discoloration all over my eyelid and it caused my eyes to appear more sunken in. It's like the premature aging I never asked for."[21]

   b.   "While SOME hair grew along my brows (not much, and not in places where I actually put the product), hair ALSO grew along the side AND underneath the eye. I now have hairy eyes, which is not what I was going for at all." [22]

   c.   "Yes, grows brows, however, do not use if only using on one brow! I am now stuck with one brow being three shades darker than the other one!"[23]

44.     Consumers have also complained that GrandeHAIR has caused side effects, such as irritation and dryness.[24]

45.     Grande Cosmetics is aware that the Enhancement Serums may cause such damage due to an active drug ingredient. Despite notice and knowledge of the injuries caused by the Enhancement Serums via the numerous consumer complaints, Grande Cosmetics has failed and/or

---

[20] AnnieSMR Comment (Mar. 2, 2021), *at* https://community.sephora.com/t5/Everything-Eyes/Grandelash-change-eye-color/m-p/4230222.
[21] MIM99 Review (June 2, 2021), *at* https://www.sephora.com/product/grandebrow-brow-enhancing-serum-P419218?skuId=2114817&icid2=skugrid:p419218.
[22] DCMouse Review (Feb. 18, 2019), *at* https://www.sephora.com/product/grandebrow-brow-enhancing-serum-P419218?skuId=2114817&icid2=skugrid:p419218.
[23] Expertchef Review (July 22, 2021), *at*  http://www.sephora.com/product/grandebrow-brow-enhancing-sreum-P419218?skuId=2114817&icid2=skugrd:p419218.
[24] *See, e.g.*, "Doesn't Work," *at* https://www.ulta.com/p/grandehair-enhancing-serum-pimprod2018702.

refused to provide an adequate remedy for the systemic injuries caused by the Enhancement Serums.

46.     Not only does Grande Cosmetics fail to disclose the possibility of severe and potentially permanent side effect, but Grande Cosmetics represents that while "sensitivity" to the product is rare, a few users may experience "mild irritation" when first using the GrandeLASH-MD.[25]

47.     Whether a product has adverse side effects caused by a drug ingredient is material information that reasonable consumers would consider in deciding to buy the Products. Indeed, The FDA has advised that, because of its potentially harmful effects, products containing isopropyl cloprostenate are "not safe for use except under the supervision of a practitioner licensed by law to administer them."[26]

48.     Reasonable consumers would consider the omitted facts to be important in determining whether or not to purchase the Enhancement Serums.

49.     Grande Cosmetics omitted the above-described material information with the knowledge that its omissions would mislead and deceive consumers. Alternatively, Grande Cosmetics was reckless or negligent in not knowing that the omissions were deceptive and/or misleading.

50.     Plaintiff and other class members relied, to their detriment, on Grande Cosmetics to distribute safe products. Instead, Grande Cosmetics marketed and sold Enhancement Serums that contain an ingredient known to cause serious adverse effects.

---

[25] Frequently Asked Questions, https://grandecosmetics.com/pages/faq (last accessed Nov. 9, 2022).
[26] Lifetech Resources LLC Warning Letter (Apr. 18, 2011), https://wayback.archive-it.org/7993/20170111100914/http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm

51.     As the direct and proximate result of Grande Cosmetics' deceptive and/or misleading material omissions, Plaintiff and other class members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Enhancement Serums.

52.     Grande Cosmetics has not recalled, relabeled, or reformulated the Enhancement Serums, nor has it warned consumers about the dangers associated with using the Enhancement Serums.

53.     Grande Cosmetics has fraudulently concealed its wrongdoing.  Plaintiff and other class members exercised reasonable diligence but could not discover the full scope of Grande Cosmetics' wrongful conduct earlier.  For instance, Grande Cosmetic has yet to reveal the truth about the Enhancement Serums, such as that the products are new unapproved drugs, and contain active ingredients and/or undisclosed risks.  To the contrary, Grande Cosmetics falsely maintains to this day that its Products are safe, merchantable, and fit for their intended purpose.

## V.      **CLASS ALLEGATIONS**

54.     Plaintiff brings this action both individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) against Grande Cosmetics on behalf of Plaintiff's own behalf and on the below classes (collectively referred to as "the Class"), to the extent class members from these jurisdictions can be grouped together for purposes of class treatment:

> National Class:   All individuals in the United States and its territories and possession who, from the beginning of the statutory period through the present, paid any money for Enhancement Serums for personal, family, or household purposes.

> New Jersey Subclass: All individuals in New Jersey who, from the beginning of the statutory period through the present, paid any money for Enhancement Serums for personal, family, or household purposes.

55.     Excluded from the Class are (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and its employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

56.     Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses as the Court deems necessary.

57.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

58.     **Numerosity**: While the exact number of class members cannot be determined without discovery, they are believed to consist of potentially tens or hundreds of thousands of consumers nationwide, and thousands of consumers in New Jersey alone. The Class is therefore so numerous that joinder of all members is impracticable.

59.     **Commonality**:  Common questions of law and fact exist as to all class members, including but not limited to:

a.   Whether the Enhancement Serums qualify as drug products under New Jersey and other states' analogous laws;

b.   Whether the Enhancement Serums are misbranded under New Jersey and other states' analogous laws;

c.   Whether Grande Cosmetics had a duty to disclose material facts regarding the Enhancement Serums' status as drugs, safety concerns associated with the ICP in the Enhancement Serums, or the illegality of the sale of the Enhancement Serums;

d.  Whether Grande Cosmetics had a duty to not misrepresent material facts regarding the Enhancement Serums' status as a drug, safety concerns associated with the Enhancement Serums, or the illegality of the sale of the Enhancement Serums;

e.  Whether Grande Cosmetics failed to disclose material facts regarding safety concerns associated with the Enhancement Serums;

f.  Whether Grande Cosmetics failed to disclose material facts regarding the Enhancement Serums status as drugs or the illegality of the sale of the Enhancement Serums;

g.  Whether Grande Cosmetics' nondisclosures and misrepresentations would be material to a reasonable consumer;

h.  Whether Grande Cosmetics knowingly or willfully misrepresented or failed to disclose the Enhancement Serums status as drugs, significant safety concerns associated with the ICP in the Enhancement Serums, or the illegality of the Enhancement Serums sales;

i.  Whether Grande Cosmetics was unjustly enriched by receiving monies in exchange for the Enhancement Serums;

j.  Whether the challenged practices harmed Plaintiff and other members of the Class; and

k.  Whether Plaintiff and other members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

60.     **Typicality**:  Plaintiff's claims are typical of other class members' claims. Plaintiff and other class members all suffered the same type of economic harm.  Plaintiff has substantially the same interest in this matter as all other class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all other class members.

61.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and have retained competent counsel experienced in pharmaceutical litigation, consumer fraud

litigation, class actions, and federal court litigation. Accordingly, Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of other class members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other class members they seek to represent. Plaintiff has no disabling conflicts with other class members and will fairly and adequately represent the interests of class members.

62.     The elements of Rule 23(b)(2) are met. Defendant has acted on grounds that apply generally to all class members so that preliminary and/or final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

63.     The requirements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  Although many other class members have claims against Defendant, the likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues would not be efficient, timely or proper. Judicial resources would be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. In addition, individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiff's counsel, highly experienced in pharmaceutical litigation, consumer fraud litigation, class actions, and federal court litigation, foresee little difficulty in the management of this case as a class action.

## VI.     CAUSES OF ACTION

### Count I – Violation of Consumer Protection Acts

64.     Plaintiff asserts this claim on behalf of herself and all similarly situated class

members under the New Jersey Consumer Fraud Act, ("NJCFA"), N.J. Stat. § 56:8-1, *et seq.*, and all states' laws that do not conflict with New Jersey law.

65.     Plaintiff and each class member have suffered injury in fact and lost money or property, an ascertainable loss, as a result of Defendant's violations of the NJCFA and non-conflicting analogous state laws.

66.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise." N.J. Stat. § 56:8-2.

67.     Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misleading, deceptive, and false statements regarding the Enhancement Serums in the course of Defendant's business. Specifically, Defendant represented that the Enhancement Serums were safe and effective, were not new unapproved drugs, and did not contain any active ingredients or undisclosed risks.  But this was not the case, as the Enhancement Serums were new drugs, with active ingredients, and with risks that were not disclosed.

68.     Had Defendant not engaged in these misleading, deceptive, and false practices, Plaintiff and other class members would not have purchased the Enhancement Serums on the same terms and/or would have paid substantially less for them.

69.     The existence of undisclosed risks and status as a new drug would have been material to Plaintiffs and other class members.

70.     Plaintiff and other class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information in that Plaintiff and other class members would not have purchased

the Enhancement Serums, or not have purchased on the same terms, had they known the truth.

71.     Pursuant to N.J. Stat. § 56:8-19 and analogous non-conflicting state laws, Plaintiff and other class members seek an order awarding damages and any other just and proper relief available under the NJCFA.

72.     In accordance with N.J. Stat. § 56:8-20, a copy of this complaint will be sent to the New Jersey Attorney General within ten (10) days of filing the same.

**Count II – Fraud (Affirmative Misrepresentation and Omission)**

73.     Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New Jersey law and all states' laws that do not conflict with New Jersey law.

74.     Defendant affirmatively misrepresented material facts about its Enhancement Serums, including but not limited to whether they were safe and effective, were not new unapproved drugs, and did not contain any active ingredients or undisclosed risks.  But this was not the case, as the Enhancement Serums were new drugs, with active ingredients, and with risks that were not disclosed.

75.     Defendant omitted material facts including, inter alia, that Enhancement Serums were new unapproved drugs, and contained active ingredients and undisclosed risks.

76.     Defendant's conduct induced customers to pay for Enhancement Serums, products which Defendant knew or should have known were not true cosmetics and which carried known or knowable undisclosed risks.  Plaintiff and other class members would not have purchased Enhancement Serums, or would not have purchased them on the same terms, had they known the truth.  Indeed, they could not have purchased the products because, as new unapproved drugs, Enhancement Serums were illegal to sell.

77.     Defendant knew, was reckless in its disregard for, or should have known of, the

true character of Enhancement Serums, including but not limited to their status as new unapproved drugs and undisclosed risks.  Prior information in the art, among other things, put Defendant on actual or constructive notice of this.

78.     Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or misleading.

79.     Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and class members to pay for Enhancement Serums.  To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff and other class members to pay for Enhancement Serums.

80.     Defendant's misrepresentations and omissions were material.

81.     Defendant actively concealed its misrepresentations and omissions from Plaintiff and other class members.

82.     But for Defendant's misrepresentations and omissions, Plaintiff and other class members would not have paid for Enhancement Serums, nor could they have, as it is illegal to sell a new unapproved drug.

83.     To the extent applicable, Plaintiff and other class members were reasonably justified in relying on Defendant's misrepresentations and omissions.  The same or substantively identical misrepresentation and omission were communicated to Plaintiff and each class member at time of purchase through product labeling and other statements by Defendant.  No reasonable consumer would have paid for Enhancement Serums but for Defendant's conduct.  To the extent applicable, reliance may be presumed in these circumstances.

84.     Plaintiff and other class members were damaged by reason of Defendant's

misrepresentations and omissions.

**Count III – Negligent Misrepresentation (Affirmative Misstatement and Omission)**

85.     Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New Jersey law and all states' laws that do not conflict with New Jersey law.

86.     Defendant affirmatively misrepresented material facts about its Enhancement Serums, including but not limited to whether they were safe and effective, were not new unapproved drugs, and did not contain any active ingredients or undisclosed risks.  But this was not the case, as the Enhancement Serums were new drugs, with active ingredients, and with risks that were not disclosed.

87.     Defendant omitted material facts including, inter alia, that Enhancement Serums were new unapproved drugs, and contained active ingredients and undisclosed risks.

88.     Defendant's conduct induced customers to pay for Enhancement Serums, products which Defendant knew or should have known were not true cosmetics and which carried known or knowable undisclosed risks.  Plaintiff and other class members would not have purchased Enhancement Serums, or would not have purchased them on the same terms, had they known the truth.  Indeed, they could not have purchased the products because, as new unapproved drugs, Enhancement Serums were illegal to sell.

89.     Defendant knew, was reckless in its disregard for, or should have known of, the true character of Enhancement Serums, including but not limited to their status as new unapproved drugs and undisclosed risks.  Prior information in the art, among other things, put Defendant on actual or constructive notice of this.

90.     Defendant knew or reasonably should have known its misrepresentations or omissions were materially false or misleading, or rendered their representations materially false or

misleading.

91.     Defendant knew or should have known that its misrepresentations and omissions would induce Plaintiff and class members to pay for Enhancement Serums.  To the extent applicable, Defendant intended its misrepresentations and omissions to induce Plaintiff and other class members to pay for Enhancement Serums.

92.     Defendant's misrepresentations and omissions were material.

93.     Defendant actively concealed its misrepresentations and omissions from Plaintiff and other class members.

94.     But for Defendant's misrepresentations and omissions, Plaintiff and other class members would not have paid for Enhancement Serums, nor could they have, as it is illegal to sell a new unapproved drug.

95.     To the extent applicable, Plaintiff and other class members were reasonably justified in relying on Defendant's misrepresentations and omissions.  The same or substantively identical misrepresentation and omission were communicated to Plaintiff and each class member at time of purchase through product labeling and other statements by Defendant.  No reasonable consumer would have paid for Enhancement Serums but for Defendant's conduct.  To the extent applicable, reliance may be presumed in these circumstances.

96.     Plaintiff and other class members were damaged by reason of Defendant's misrepresentations and omissions.

**Count IV – Breach of Express Warranty**

97.     Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New Jersey law and all states' laws that do not conflict with New Jersey law.

98.     Plaintiff and each other class member formed a contract with Defendant at the time

they purchased Enhancement Serums. The terms of the contract include the promises and affirmations of fact made by Defendant on the Enhancement Serums' packaging and through marketing and advertising, including that the product would be of the quality and character as represented including but not limited to statements about the safety and efficacy of the product, and the lack of disclosure about dangerous side effects, risks, or active ingredients.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between class members and Defendant.

99.     Defendant expressly warranted that its Enhancement Serums were cosmetic products, not new unapproved drugs, and were safe and effective for intended use, and did not contain any undisclosed risks.

100.    Defendant sold Enhancement Serums that they expressly warranted were safe and effective cosmetics versus new unapproved drugs, and did not contain any undisclosed risks.

101.    Defendant's Enhancement Serums did not conform to its express representations and warranties because the products were not compliant with drug regulations, were misbranded, and contained undisclosed risks.

102.    At all times relevant times New Jersey and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

103.    At the time Defendant marketed and sold its Enhancement Serums, it recognized the purposes for which the products would be used, and expressly warranted the products were cosmetic products not new unapproved drugs, were safe and effective for intended use, and did not contain any undisclosed risk.  These affirmative representations became part of the basis of the bargain in every purchase.

104.    Defendant breached its express warranties with respect to its Enhancement Serums as they were not of merchantable quality, and were not fit for their ordinary purpose.

105.    Plaintiff and each other class member would not have purchased the Enhancement Serums had they known these products were new unapproved drugs and carried undisclosed risks.

106.    To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because among other things, Defendant is a manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and other class members.

107.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of their medications, the purchase price of any replacement medications, and any consequential damages resulting from the purchases, in that the Enhancement Serums they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

108.    Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

**Count V – Breach of Implied Warranty**

109.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New Jersey law and all states' laws that do not conflict with New Jersey law.

110.    Plaintiff and each other class member formed a contract with Defendant at the time they purchased Enhancement Serums. The terms of the contract include the promises and affirmations of fact made by Defendant on the Enhancement Serums' packaging and through marketing and advertising, including that the product would be of the quality and character as represented including but not limited to statements about the safety and efficacy of the product,

and the lack of disclosure about dangerous side effects, risks, or active ingredients.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between class members and Defendant

111.   Defendant impliedly warranted that its Enhancement Serums were cosmetic products, not new unapproved drugs, and were safe and effective for intended use, and did not contain any undisclosed risks.

112.   Defendant sold Enhancement Serums that they impliedly warranted were safe and effective cosmetics versus new unapproved drugs, and did not contain any undisclosed risks.

113.   Defendant's Enhancement Serums did not conform to its implied representations and warranties because the products were not compliant with drug regulations, were misbranded, and contained undisclosed risks.

114.   At all times relevant times New Jersey and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

115.   At the time Defendant marketed and sold its Enhancement Serums, it recognized the purposes for which the products would be used, and impliedly warranted the products were cosmetic products not new unapproved drugs, were safe and effective for intended use, and did not contain any undisclosed risk.  These representations became part of the basis of the bargain in every purchase.

116.   Defendant breached its implied warranties with respect to its Enhancement Serums as they were not of merchantable quality, and were not fit for their ordinary purpose.

117.   Plaintiff and each other class member would not have purchased the Enhancement Serums had they known these products were new unapproved drugs and carried undisclosed risks.

118.    To the extent applicable, direct privity is not required between Defendant and Plaintiff or other class members because among other things, Defendant is a manufacturer and made direct statements about the safety of its products, and intended its statements and affirmations to flow to Plaintiff and other class members.

119.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and each other class member have been injured and suffered damages in the amount of the purchase price of their medications, the purchase price of any replacement medications, and any consequential damages resulting from the purchases, in that the Enhancement Serums they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

120.    Pre-suit notice is not required, but even if it is, such notice was provided to Defendant.

**Count VI – Negligence**

121.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New Jersey law and all states' laws that do not conflict with New Jersey law.

122.    Defendant owed a duty to Plaintiff and each other class member to ensure its Enhancement Serums complied with applicable drug regulations, were not misbranded, were safe and effective, and did not contain any undisclosed active ingredients or risks.

123.    Defendant owed a duty to Plaintiff and each other class member because the latter were foreseeable, reasonable, and probably users of Enhancement Serums, and victims of Defendant's deceptive and wrongful conduct.  Defendant knew, or should have known, that its Enhancement Serums did not comply with applicable drug regulations, were new unapproved drugs, were misbranded, were not safe and effective, and contained undisclosed active ingredients or risks.

124.    Defendant inadequately oversaw its own manufacture, distribution, marketing, and sale of its Enhancement Serums, resulting in new unapproved drugs (the Enhancement Serums) being sold to consumers without disclosure of the true character of the product.

125.    Defendant maintained or should have maintained a special relationship with Plaintiff and each other class member, who were anticipated or intended direct and intended third-party beneficiaries, as it was obligated to ensure that its Enhancement Serums complied with applicable drug regulations, were not misbranded, were safe and effective, and did not contain any undisclosed active ingredients or risks.

126.    Defendant's own actions and inactions created a foreseeable risk of harm to Plaintiff and each other class member.

127.    Defendant breached duties owed to Plaintiff and each other class member by failing to exercise reasonable care sufficient to protect the interests and meet the needs of Plaintiff and each other class member.

128.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and each other class member suffered injury and are entitled to damages in an amount to be proven at trial.

**Count VII – Unjust Enrichment**

129.    Plaintiff asserts this claim on behalf of herself and all similarly situated class members under New Jersey law and all states' laws that do not conflict with New Jersey law.

130.    Defendant was unjustly enriched at the expense of Plaintiff and each other class member by virtue of their paying for Defendant's Enhancement Serums.

131.    Defendant profited immensely from introducing a new unapproved drug, with undisclosed risks, into the United States for human use. On top of that, because its Enhancement

Serums were new unapproved drugs and misbranded, their distribution and sale in the United States was illegal.

132.   Plaintiff and each other class member were unjustly deprived of money obtained by Defendant as a result of the improper amounts paid for Defendant's Enhancement Serums.  It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation obtained from Plaintiff and each other class member as a result of Defendant's wrongful conduct alleged.

133.   In the alternative to the other causes of actions alleged herein, Plaintiff and each other class member have no adequate remedy at law.

134.   Plaintiff and each other class member are entitled to seek and do seek restitution from Defendant as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendant's by virtue of its wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

A.   An order certifying this action as a class action;

B.   An order appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel to represent the Class;

C.   A declaration that Defendant is liable pursuant to each and every one of the above-enumerated causes of action;

D.   An order awarding appropriate preliminary and/or final injunctive relief against the conduct of Defendant described herein;

E.   Payment to Plaintiff and class members of all damages, exemplary or punitive damages, and/or restitution associated with the conduct for all causes of action in an amount to be proven at trial, including but not limited to the full amounts paid or

reimbursed for Enhancement Serums; the costs to replace or return Enhancement Serums; Defendant's ill-gotten gains; and/or the increases in the amounts paid for non-misbranded Enhancement Serums;

F.      An award of attorneys' fees, expert witness fees, and costs, as provided by applicable law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class members;

G.      An award of statutory penalties to the extent available;

H.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

I.      Such other and further relief as this Court may deem just, equitable, or proper.

## **JURY DEMAND**

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Dated: November 16, 2022

Respectfully Submitted,

*/s/ Ruben Honik*
Ruben Honik
David J. Stanoch, Of Counsel
Honik LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 267-435-1300
ruben@honiklaw.com
david@honiklaw.com