# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA NIXON, individually, and on behalf of all others similarly situated,<br>　　　Plaintiff,<br><br>v.<br><br><br>GRANDE COSMETICS, LLC,<br>　　Defendant | Case No. 1:22-cv-06639 |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, <u>AND SERVICE AWARD</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

I.  INTRODUCTION ...........................................................................1

II. PERTINENT BACKGROUND ...........................................................2

    A. Case Overview ....................................................................... 2

    B. Settlement Overview ............................................................... 2

III.PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE
AND AUTHORIZED BY THE SETTLEMENT.................................4

    A. The Settlement Agreement Provides for a Percentage of Recovery .......... 4

    B. A Lodestar Cross-Check Underscores the Requested Fee's
Reasonableness ....................................................................... 14

IV. THE COSTS REQUESTED ARE REASONABLE AND WERE
NECESSARILY INCURRED................................................22

V. THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD
BE APPROVED .........................................................................23

VI. CONCLUSION.............................................................................24

# TABLE OF AUTHORITIES

## Cases

*Adam X. v. N.J. Dep't of Corr.*,
  2022 WL 621089 (D.N.J. Mar. 3, 2022) ..............................................................19

*Adeva v. Intertek USA Inc.*,
  No. 09-1096, ECF 228 (D.N.J. Dec. 22, 2010) ....................................................13

*Beltan v. Sos Ltd.*,
  No. 21-7454, 2023 WL 319895 (D.N.J. Jan. 3, 2023)............................................13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...........................................................................................5, 6

*Brown v. Kardence Int'l, Inc.*,
  No. 22-1097, 2023 WL 6050215 (E.D. Pa. Sept. 15, 2023) ................................13

*Brytus v. Spang & Co.*,
  203 F.3d 238 (3d Cir. 2000) ....................................................................................5

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ....................................................................5

*Cullen v. Whitman Medical Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ...........................................................................10

*Dartell v. Tibet Pharms. Inc.*,
  No. 14-3620, 2017 WL 2815073 (D.N.J. June 29, 2017)................................ 13, 14

*Doe v. Cin-Lan, Inc.*,
  No. 08-cv-12719, 2011 WL 13266312 (E.D. Mich. July 15, 2011) ....................17

*Fleisher v. Fiber Composites, LLC*,
  Civ. A. No. 12-1326, 2014 WL 86641 (E.D. Pa. Mar. 5, 2014) ..........................23

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2001) .............................................................................5, 10

*Harlan v. NRA Group, LLC*,
  No. 10-0324, 2011 WL 813961 (E.D. Pa. Mar. 2, 2011)......................................20

*Haught v. Summit Res., LLC*,
  No. 1:15-cv-0069, 2016 WL 1301011 (M.D. Pa. Apr. 2016)..............................23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...........................................................................................5

*In re AT&T Corp. Secs. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ...............................................................................19

*In re Baby Products Litigation*,
  708 F.3d 163 (3d Cir. 2013).............................................................................6, 8

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ......................................................................... 16, 21

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) ..........................................................................22

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................17

*In re Diet Drugs Prods. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009)............................................................................6, 16

*In re Flonase Antitrust Litig.*,
  951 F. Supp. 3d 739 (E.D. Pa. 2013)...............................................................9, 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...................................................................................4

*In re Ikon Office Solutions, Inc. Secs. Litig.*,
  194 F.R.D. 166  (E.D. Pa. 2000) .........................................................................14

*In re Lucent Tech., Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2006).......................................................................14

*In re Merck & Co. Vytorin ERISA Litig.*,
Civ. A. No. 08-cv-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010).................. 19, 21

*In re Prudential Insurance Company of America Sales Practices Litigation Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .................................................................................5

*In re Remeron End–Payor Antitrust Litig.*,
No. 02–2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005)..................................24

*In re Remicade Antitrust Litig.*,
No. 17-cv-4326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023)...........................19

*In re Rite Aid Secs. Litig.*,
396 F.3d 294 (3d Cir. 2005) ........................................................................ 14, 21

*In re Spectrum Brands Litig.*,
19-cv-178, 2022 WL 767044 (W.D. Wisc. Mar. 14, 2022)................................17

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
13-MD-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ..................................13

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001)...............................................................11

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015).....................................................................17

*In re Wawa, Inc. Data Security Litig.*,
85 F. 4th 712 (3d Cir. 2023) .................................................................. 3, 7, 8, 12

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
No. 08-0235, 2019 WL 4877563 (D.N.J. Oct. 3, 2019).......................... 21, 22, 23

*Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976) ....................................................................... 15, 21

*Mandel v. Grande Cosmetics, LLC*,
No. 3:22-cv-00071 (N.D. Cal.)...................................... 3, 11, 16, 17, 18, 19, 21

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008)........................................................................9

*McDonough v. Toys R Us, Inc.*,
   80 F. Supp. 3d 626 (E.D. Pa. 2015)................................................................8, 13

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) .............................................................................................22

*Moore v. GMAC Mortg.*,
   Civ. A. No. 07-4296, 2014 WL 125538188 (E.D. Pa. Sept. 19, 2014)...............19

*Posa v. City of East Orange*,
   Civ. No. 03-233, 2005 WL 2205786 (D.N.J. Sept. 8, 2005)...............................15

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
   623 F.3d 82 (2d Cir. 2010) ..................................................................................17

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................................4, 23

*Yates v. Mobile Cnty. Pers. Bd.*,
   719 F.2d 1530 (11th Cir. 1983) ...........................................................................12

*Yong Soon Oh v. AT&T Corp.*,
   225 F.R.D. 142 (D.N.J. 2004) ..............................................................................23

**Rules**
Fed. R. Civ. P. 23(h) ................................................................................... 4, 13, 22

## I.   INTRODUCTION

This Court granted preliminary approval of the parties' proposed class action settlement agreement (the "Settlement") on December 14, 2023 (ECF 47).  The Settlement will resolve Plaintiff's and Settlement Class Members' claims against Defendant Grande Cosmetics, LLC ("Grande") in this matter concerning the marketing of GrandeLASH-MD Lash Enhancing Serum, GrandeBROW Brow Enhancing Serum, and GrandeHAIR Enhancement Serum ("the Products" or "the Serums").

Under the Settlement, Grande will create a non-reversionary settlement fund totaling $6,250,000 in cash, with no coupons.  Each Settlement Class Member will receive a pro rata share in an amount up to $150.00, and potentially more if they purchased multiple products and any funds remain after an initial distribution. Pursuant to the Settlement, Grande also has agreed to certain marketing and business-practice changes.

This monetary and non-monetary relief is an excellent result for the Settlement Class. Plaintiff now moves, pursuant to the Settlement, Federal Rule of Civil Procedure 23(h), and this Court's preliminary approval order, for $2,000,000 in attorneys' fees, $25,465.85 in costs, and a $15,000 service award.  As discussed

more fully below, these requested amounts are well within the ranges approved by courts in this District and Circuit in similar nationwide consumer class actions.

## II.    PERTINENT BACKGROUND

### A. Case Overview

Plaintiff set forth a thorough overview of this case's allegations and the current procedural posture in her since-granted motion for preliminary approval. *See generally* ECF 25. Plaintiff incorporates that overview by reference and will not repeat it here. Plaintiff merely notes here that this class action concerns Grande's allegedly deceptive or otherwise actionable marketing and sale of the Serums, and that the Settlement will resolve all such claims on a nationwide basis.

### B. Settlement Overview

The Court is familiar with the Settlement's terms from Plaintiff's motion for preliminary approval (ECF 25), Plaintiff's supplemental memorandum in support of preliminary approval (ECF 42), and the preliminary approval hearing on December 13, 2023. For purposes of this Motion, Plaintiff recaps the key monetary and non-monetary relief obtained for the Settlement Class.

The Settlement provides that Grande will commit $6,250,000 (all cash, no coupon) to a non-reversionary fund from which each Settlement Class Member may receive a pro rata share in an amount up to $150.00, and potentially more if they purchased multiple products and any funds remain after an initial distribution. *See* ECF 25-1 at ¶ 2.2. Further, pursuant to the Settlement, Grande has agreed to

marketing and business-practice changes to enhance the warnings and instructions on the Products' packaging and other marketing materials.  ECF 25-1 at ¶ 2.3.

The Settlement provides greater, guaranteed relief for the Settlement Class than the disapproved settlement in *Mandel v. Grande Cosmetics, LLC*, No. 3:22-cv-00071 (N.D. Cal.). As detailed in Plaintiff's motion for preliminary approval, the Settlement here directly addressed each issue that gave the *Mandel* court pause.  *See* ECF 25 at 1-4.

The Settlement's notice program, as approved by this Court, is robust and goes beyond what other notice programs have entailed in similar consumer class action cases.  *See* ECF 25 at 27-29; ECF 42.

The Settlement provides that Plaintiff may seek an award of attorneys' fees of up to one-third of the total settlement amount, as well as litigation costs and a service award for Plaintiff of up to $15,000.  *See* ECF 25-1 at ¶¶ 2.4, 2.5.  And while so-called clear sailing provisions are not "bar[s] to settlement to approval," *see In re Wawa, Inc. Data Security Litigation*, 85 F.4th 713 (3d Cir. 2023), the parties proactively amended the Settlement to remove any language that could possibly be viewed as a clear sailing provision.  *See* ECF 42-3.

### III.   PLAINTIFF'S   REQUEST   FOR   ATTORNEYS'   FEES   IS   REASONABLE AND AUTHORIZED BY THE SETTLEMENT

At the conclusion of a successful class action, class counsel may apply to a court for an award of attorneys' fees. *See* Fed. R. Civ. P. 23(h). The amount of an attorneys' fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes finding of fact not clearly erroneous[.]" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 (3d Cir. 2011) (en banc) (internal quotations and citation omitted).  Plaintiff's Class Counsel requests attorneys' fees in the amount of $2,000,000, or 31.25% of the settlement fund.  This is less than the amount provided for by the Settlement (*see* ECF 25-1, at ¶ 2.4) (33.3%).  Not only is Plaintiff's request below the amount contemplated by the Settlement and Court-approved class notice, but the request falls within the acceptable range of fees routinely approved in this Circuit.

### A. The Settlement Agreement Provides for a Percentage of Recovery

"Attorneys' fees requests are generally assessed under one of two methods: the percentage- of-recovery ('POR') approach or the lodestar scheme." *Sullivan*, 667 F.3d at 330. The POR approach is appropriate in cases involving a common settlement fund, i.e., when a settlement contemplates one fund from which class member payments and attorneys' fees will be paid. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). The Supreme Court has recognized that "'a litigant or a lawyer who recovers a common

fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The Settlement provides that Plaintiff may request attorneys' fees up to one-third of the settlement fund, plus reimbursement of litigation costs and a service award for Plaintiff.  *See* ECF 25-5 at ¶¶ 2.4, 2.5.  This was an appropriate way to resolve attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *see also Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) (where "parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference").

To determine whether a percentage is reasonable, courts in this Circuit consider the following non-exhaustive factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2001) and *In re Prudential Insurance Company of America Sales Practices Litigation Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998):

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and

duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement[.]

*In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (intervening citations omitted).

Further, when attorneys' fees are calculated based on the entire fund, a court "requir[es] every member of the class to share attorney's fees to the same extent that [they] can share the recovery." *Boeing*, 444 U.S. at 478. Thus, courts should only decrease a fee award "[w]here a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013). Class Counsel's fee request here falls within this acceptable range. As discussed *infra*, application of the appropriate factors supports the fee request. In addition, a fee award of 31.25% is consistent with (and indeed, less than) the fee awards approved in similar cases.

**The Size of the Fund (Factor One).**  The first factor favors Plaintiff's fee request. The settlement fund will be sufficiently funded by Grande to ensure that every single Settlement Class Member will receive a direct benefit from it.  The settlement fund totals $6,250,000, all in non-reversionary cash, with no coupons.

ECF 25-1 at ¶ 1.4.  All of this money inures to the benefit of the Settlement Class.
No money will revert to Grande, *see id.*, unlike the "puzzling" reversion that gave
the Third Circuit pause in *In re Wawa, Inc. Data Security Litigation*, 85 F. 4th 712,
726 (3d Cir. 2023). The Settlement also provides substantial non-monetary relief.
Both the monetary and non-monetary relief represent significant, tangible value to
the Settlement Class.

At the preliminary approval hearing, the Court asked Plaintiff to address in its
fee petition whether the discussion about the size of the fund in *In re Wawa* applies
here.  It does not.

A serial objector initially objected to the *In re Wawa* settlement because, *inter
alia*, (i) a reversion provision would put unclaimed money back in the defendant's
hands (i.e., there was no supplemental pro rata distribution), (ii) there was a separate,
segregated fund for attorneys' fees, (iii) there was a so-called clear sailing provision,
and (iv) the plaintiffs valued injunctive relief that the defendant arguably instituted
in the ordinary-course due to the data breach at $35 million.  *See generally* Case No.
2:19-cv-6019 (E.D. Pa.), ECF 263.  Issues (ii) and (iii) do not apply here.  The
Settlement does not create a side-pot for attorneys' fees, and the parties proactively
amended the Settlement earlier to excise any language interpretable as a clear sailing
provision.

The remaining two issues, (i) and (iv), do not apply here, either. The Settlement here is non-reversionary.  Even the objector agreed that, after the *In re Wawa* parties amended their settlement to cut-out the reversion provision, the common fund inuring to class members' benefit rose from $1.5 million (Mr. Fank's original math) to $6.4 million (objector's revised math).  *See* Case No. 2:19-cv-6019 (E.D. Pa.), ECF 278.  The objector then compared the fee request there ($3.2 million) to the gross settlement fund ($6.4 million, by his math), which he said was disproportionate because the fee requested was 50% of the $6.4 million.[1]

Even applying the objector's logic here (and Plaintiff does not condone his objections in *In re Wawa*),[2] the result is that Plaintiff's fee request is only 31.25% of the total settlement fund.[3]  As noted *infra*, this is squarely within the range of fee awards routinely approved in this Circuit and elsewhere.

---

[1] His arithmetic was: $6,400,000 (value of fund by his math) ÷ $3,200,000 (fee request) = 50%.

[2] While inapplicable here, the objector's position that the gross value of a settlement fund should be reduced for reverter or cy pres provisions is inconsistent with Third Circuit law.  *See McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 654 (E.D. Pa. 2015) ("In *Baby Products* itself, the Third Circuit confirmed that courts may calculate attorneys' fees based on the gross settlement fund even where the settlement contains a reverter or cy pres provision.") (citing *In re Baby Products Litigation*, 708 F.3d 163, 177-79 (3d Cir. 2013)).

[3] The arithmetic is: $6,250,000 (settlement fund) ÷ $2,000,000 (fee request) = 31.25%.

That the Settlement ensures that valid claimants will share in an additional pro rata recovery in the event monies remain after an initial distribution means all money in the settlement fund is inuring to Settlement Class Members' benefit. *See* ECF 25-1 at ¶ 2.4. Thus, the *In re Wawa* court's discussion of calculating the class benefit via the "fund made available" versus the "amounts actually claimed" (*see* 85 F.3d at 725) is inapplicable here. Under either approach—and both approaches are permissible[4]—the total amount inuring to the Settlement Class Members' benefit is the same. Thus, the size of the fund (factor one) favors the fee request here. *See, e.g., In re Flonase Antitrust Litig.*, 951 F. Supp. 3d 739, 747 (E.D. Pa. 2013) (this factor favored approval of requested fee because "[e]very dollar of the net fund will be distributed to class members" after fees, costs, and service award).

Moreover, aside from the substantial monetary relief, the Settlement also provides for a broad slate of non-monetary relief that directly benefits each Settlement Class Member. *See* ECF 25-1. Even without putting a dollar value on this relief, these important non-monetary components represent substantial value to each Settlement Class Member and are additional direct benefits that each Settlement Class Member will receive, further supporting the requested fee here. *See, e.g., McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478-79 (D.N.J. 2008).

---

[4] *In re Wawa*, 85 F. 4th at 724 ("Indeed, courts can evaluate the reasonableness of a percentage-based award by reference to *either* amounts paid *or* amounts made available.") (emphasis original).

***Objections to the Settlement (Factor Two).*** Objections are not yet due under this Court's preliminary approval order. *See* ECF 47. Therefore, this factor is neutral at this time. Plaintiff will further address this factor in her supplemental memorandum due to be filed at the claims, opt-out, and objection period. *Id.*

***The Complexity and Duration of the Litigation (Factor Four), the Skill and Efficiency of the Attorneys Involved (Factor Three), the Value of Benefits Attributable to the Efforts of Class Counsel (Factor Eight), Innovative Terms of the Settlement (Factor Ten), and Their Time Devoted (Factor Six).*** These factors collectively favor approval of the requested fee. Per the Third Circuit, the goal of percentage-based fee awards in class case to see that "that competent counsel continue to undertake risky, complex, and novel litigation." *Gunter*, 223 F.3d at 198. "The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).

There is no question this matter, pending for over a year, would be complex if it were litigated further. Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. *See* Ex. A at ¶¶ 5-6. Class Counsel regularly engage in major complex litigation involving consumer and other complicated class claims, and have been appointed class counsel by courts throughout the country. *Id.* Navigating the strengths and

weaknesses of Plaintiff's and the Class's claims were crucial to posturing this matter for the excellent result Class Counsel obtained for the benefit of the entire Settlement Class.

Also, the skill and competence of Grande's lawyers should be considered and cannot be doubted. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced"). Grande is represented by Locke Lord LLP, a premier full-service law firm specializing in complex litigation and other areas, with hundreds of attorneys in 20 offices throughout the world. *See* https://www.lockelord.com/. For this reason, Class Counsel had to stay on the very top of every single one of the many complicated issues in this action.

All told, the complexity and duration of the case (factor four) and the skill of Class Counsel (factor three) favor the requested fee.

Because of Class Counsel's experience and diligence, they were able to obtain a substantial monetary and non-monetary recovery for Plaintiff and the Settlement Class. Absent Class Counsel's efforts, Settlement Class Members did not stand to receive any recovery (factor eight), a point underscored by the disapproval of the proposed *Mandel* settlement. The non-monetary relief obtained through the Settlement also represents a substantial benefit directly attributable to Class

11

Counsel's efforts, and stands in stark contrast to the non-monetary relief in *In re Wawa*. There, the objector argued the defendant had already instituted business practices changes (*viz.*, better data security) upon discovery of the data breach, not because of the class plaintiffs' lawsuit. *See* Case No. 2:19-cv-6019 (E.D. Pa.), ECF 263. Here, Grande only agreed to its disclosure changes through the Settlement. This is another reason factor eight militates in favor of approving the requested fee.

The Settlement might not include any groundbreakingly innovative terms (factor ten). Yet, it nevertheless provides a robust combination of significant, guaranteed monetary relief, as well as concrete, valuable non-monetary relief. At worst, factor ten is neutral.

Finally, as to time devoted (factor six), Class Counsel leanly staffed this matter yet still devoted approximately 400 hours to it. This was time that could not be spent on litigating other matters. Ex. A at ¶¶ 8, 13-14; *see Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (recognizing that the expenditure of 1,000 billable hours, often in significant blocks of time, "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work"). This factor also favors the requested fee.

***Risk of Nonpayment (Factor Five).*** The risk of nonpayment in this action was not negligible. Were this case litigated further on the merits, success was far from guaranteed. As Plaintiff explained at preliminary approval, were this matter to

continue to be litigated, additional complicated, costly fact and expert discovery would need to occur; class certification would be a hotly-contested procedural event (not to mention any Rule 23(f) appeal); and further merits briefing would involve substantial, potentially dispositive defenses raised by Grande at summary judgment or trial. *See* ECF 25 at 20-21. In short, this factor supports approval of the requested fee. *See, e.g.*, *In re Flonase*, 951 F. Supp. 2d at 748 ("as a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial"); *see also* Ex. A at ¶ 7 (Class Counsel litigated this case on contingent basis).

***Awards in Similar Cases (Factor Seven), and the Percentage Fee Had It Been Negotiated on a Private Contingency Basis (Factor Nine).*** Both of these factors favor approval of the requested fee. Courts in this Circuit routinely approve class counsel fee awards up to "forty-five percent of the common fund." *McDonough*, 80 F. Supp. 3d at 653 (collecting cases). The fee award requested here is 31.25% of the settlement fund, which is well within the range of fees approved by other courts in this District and Circuit.[5]

---

[5] *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 13-MD-2445, 2023 WL 8437034, at *14 (E.D. Pa. Dec. 4, 2023) (33.3%); *Brown v. Kardence Int'l, Inc.*, No. 22-1097, 2023 WL 6050215, at *5 (E.D. Pa. Sept. 15, 2023) (35%); *Beltan v. Sos Ltd.*, No. 21-7454, 2023 WL 319895, at *7 (D.N.J. Jan. 3, 2023) (33.3%); *Dartell v. Tibet Pharms. Inc.*, No. 14-3620, 2017 WL 2815073, at *10-11 (D.N.J. June 29, 2017) (33.3%); *In re Flonase*, 951 F. Supp. 3d at 748 (33.3%); *Adeva v. Intertek USA Inc.,* No. 09-1096, ECF 228 (D.N.J. Dec. 22, 2010) (34%).

Finally, were this case brought individually on a contingency fee basis (factor nine), Class Counsel would be entitled to recover up to 40% of any recovery. *See, e.g.*, *Dartell*, 2017 WL 2815073, at * 11 ("the customary contingent fee would likely range between 30% and 40% of the recovery"); *In re Lucent Tech., Sec. Litig.,* 327 F. Supp. 2d 426, 442 (D.N.J. 2006) (same); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

## B. A Lodestar Cross-Check Underscores the Requested Fee's Reasonableness

Although "the percentage of common fund approach is the proper method of awarding attorneys' fees," courts in this Circuit occasionally apply the lodestar method as well as a cross-check of a fee calculation under the POR method. *In re Rite Aid Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). "[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *Id.* at 307. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at 306-07.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Id.* at 305. The lodestar is then subject to a multiplier

(sometimes called the "lodestar multiplier"). *Id.*; *see also, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976).

The hours and rates in this action are reasonable, as set forth below. The total lodestar here is $1,010,828.80, or a modest 1.98 lodestar multiplier.[6]  This is well within the range of cross-check lodestar multipliers approved by courts in this Circuit.

***The Number of Hours Worked is Reasonable.***  Class Counsel spent nearly 400 hours in this action. Ex. A at ¶ 8. The number of hours is reasonable given the breadth of this litigation. Since this action's inception, Class Counsel has spent significant time and effort in prosecuting the class claims against Grande, including:

- Extensive pre-filing investigation of the class claims, including multiple interviews with Plaintiff;[7]
- Conducting legal research regarding various procedural and substantive issues;
- Researching and drafting the complaint;
- Reviewing and negotiating data and other information requests to Grande;
- Drafting and negotiating settlement documents, including the lengthy settlement agreement, class notice, and notice and settlement administration plan; and

---

[6] The arithmetic is: $1,010,828.80 * 1.98 = $2,000,000.00.

[7] The Third Circuit construes "[c]ompensable activities to include pre-litigation services in preparation of filing the lawsuit, background research and reading complex cases, [and] productive attorney discussions[.]" *Posa v. City of East Orange*, Civ. No. 03-233, 2005 WL 2205786, at *4 (D.N.J. Sept. 8, 2005) (collecting Third Circuit cases).

- Preparing the preliminary and final approval pleadings.

Ex. A at ¶ 15.  None of hours submitted herewith by Class Counsel include any time spent on Plaintiff's individual personal injury case (No. 23-cv-1199 (D.N.J.)), or any time spent on the intervention issues involving the *Mandel* plaintiff.  *Id.*

In addition to Class Counsel's own time, it is appropriate to consider a portion of the time spent by Plaintiff Mandel's counsel as well.  The Third Circuit has held that non-lead counsel may be apportioned attorneys' fees and costs when their work confers benefit on the class, *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) ("The traditional common fund doctrine will remain the touchstone of this analysis, and non-lead counsel will have to demonstrate that their work actually benefited the class."); *see also id.* at 191 (other counsel may "demonstrate that their work conferred a benefit on the class *beyond* that conferred by lead counsel."). This includes work that might predate the appointment of class counsel.  *Id.* at 195-96.

*In re Cendant* was a securities case.  But the principle—that non-class counsel's work may be considered as part of a fee petition–arises from the common fund doctrine and is not limited to securities cases only.  *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524, 554 (3d Cir. 2009) (affirming award of attorneys' fees where counsel's efforts led to recoveries for two separate sets of plaintiffs, those within a settlement class and those outside the class but whose cases were "substantially

aided" by counsel's case-wide services).  Many other courts also have invoked the

common fund doctrine to award unappointed counsel "reasonable compensation"

for unique work that in fact benefited the class.[8]

It is only fair to consider the efforts of Plaintiff Mandel's counsel because her

counsel provided substantial work that directly benefited the Settlement Class here.[9]

For instance, due to the efforts of Mandel's counsel, Class Counsel here did not need

to fully brief Grande's principal motion-to-dismiss arguments, because those

arguments were briefed in *Mandel* and resolved largely in favor of the plaintiff's

side.  In addition, Mandel's counsel sought, negotiated, and received thousands of

pages of discovery from Grande.  All of those materials were provided to Plaintiff

and her Class Counsel here without fuss.  Had Plaintiff Mandel's counsel not done

all the work to pave the way for that discovery (which included materials that formed

---

[8] *See, e.g., Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 88 (2d Cir. 2010);  *In re Spectrum Brands Litig.*, 19-cv-178, 2022 WL 767044 (W.D. Wisc. Mar. 14, 2022) (awarding attorneys' fees to counsel in one class action where that counsel's work benefited another parallel class action); *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 179 (D. Mass. 2015) (awarding attorneys' fees to non-class counsel for "work that benefited the class," including work prior to consolidation into an MDL); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 391 (S.D.N.Y. 2013) (awarding non-class counsel attorneys' fees for work that "benefited the class"); *Doe v. Cin-Lan, Inc.*, No. 08-cv-12719, 2011 WL 13266312 (E.D. Mich. July 15, 2011) (awarding attorneys' fees to non-class counsel whose work in parallel state court case benefited settlement class).

[9] Class Counsel intend to share any fee and cost award with Mandel's counsel in recognition of their work that directly and substantially benefited the Settlement Class.

17

the basis for the Settlement), Class Counsel here would have had do that work themselves.

Mandel's counsel incurred 1,068.5 hours for work that directly and substantially benefited the Settlement Class. *See* Ex. B at ¶ 24. To be clear, this excludes any work that could be viewed as potentially duplicative of Class Counsel's work, or work involving Plaintiff Mandel's since withdrawn request to intervene in this case. *Id.* at ¶¶ 10, 14, 25, 29-30. Their hours are solely the portion of time limited to work that directly benefited the Settlement Class and which was work Class Counsel otherwise would have had to undertake, e.g., motion to dismiss briefing and discovery negotiations. *Id.* at ¶¶ 25-29.[10]

Collectively, Class Counsel and Plaintiff Mandel's counsel incurred over 1,460.2 hours of work for the Settlement Class's benefit. Ex. A at ¶ 16. All counsel took steps to ensure that work was distributed efficiently. Ex. A at ¶ 13; Ex. B at ¶¶ 43, 46, 48, 50, 52, 54. The total number of hours of 1,460.2 is reasonable given the duration, progression, nature, and complexity of this litigation, and reflects the efficient management of this litigation.

---

[10] Mandel's counsel also excluded any timekeeper who spent less than 20 hours on the litigation (*see* Ex. B at ¶¶ 11, 31-32), excluded another 319.4 hours as part of their conservative approach to include only time that directly and substantially benefited the Settlement Class (*id.* at ¶ 30), and excluded another 101.2 hours spent litigating Plaintiff Mandel's individual claim (*id.* at ¶ 30 n.2). In total Mandel's counsel has excluded over $200,000 in incurred time. *Id.*

***The  Hourly Rates Are Reasonable.***  At the hourly rates currently charged by Plaintiff's Class Counsel, and Plaintiff Mandel's counsel for the discrete work that substantially and directly benefited the Settlement Class, the lodestar multiplier would be a modest 1.98.  Ex. A at ¶ 11.

Billing rates "should be reasonable in light of the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (internal quotations and citations omitted). Here, Class Counsel's hourly rates range between $525 and $825, *see* Ex. A at ¶ 8, and Plaintiff Mandel's counsel's hourly rates are based on the 2023 Adjusted Laffey Matrix, ranging between $239 and $1057. *See* Ex. B at ¶ 26; *see also* http://www.laffeymatrix.com/. These rates are consistent with rates charged by attorneys in comparable law practices in this Circuit. *See, e.g., In re Remicade Antitrust Litig.*, No. 17-cv-4326, 2023 WL 2530418, at *28 (E.D. Pa. Mar. 15, 2023) (finding rates up to $1,200 per hour reasonable for senior attorneys); *Adam X. v. N.J. Dep't of Corr.*, 2022 WL 621089, at *11 (D.N.J. Mar. 3, 2022) (finding hourly rates up to $995 per hour reasonable); *Moore v. GMAC Mortg.*, Civ. A. No. 07-4296, 2014 WL 125538188, at *2 (E.D. Pa. Sept. 19, 2014) (finding hourly rates used in the lodestar calculation reasonably ranged between $325 and $860 per hour); *In re Merck & Co. Vytorin ERISA Litig.*, Civ. A. No. 08-cv-285, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) (approving rates up to $835 per hour).  Other courts in this

19

Circuit and elsewhere also have approved these same rates in other class action settlements involving Class Counsel[11] and Plaintiff Mandel's counsel.[12]

Finally, a 2014 Survey of Hourly Billing Rates conducted by the National Law Journal shows that – nearly a decade ago – senior partner billing rates among law firms in New Jersey and Philadelphia were as high as $850 to $1,050 per hour.[13] The NLJ survey has been cited with approval in district courts within this Circuit. *See, e.g.*, *Harlan v. NRA Group, LLC*, No. 10-0324, 2011 WL 813961, at *1 n.1 (E.D. Pa. Mar. 2, 2011).

All of this is to say the hourly rates claimed by the attorneys in this litigation are reasonable.

---

[11] *See, e.g., Brodowicz v. Walmart, Inc.*, No 21-cv-60643 (S.D. Fla.) at ECF 85 (motion seeking same hourly rates for Class Counsel as those requested here) & ECF 89 (granting same); *Presque Isle Colon & Rectal Surgery v. Highmark Health*, No. 17-cv-0122 (W.D. Pa.) at ECF 62 (same request for nearly identical hourly rates) & ECF 64 (granting same); *Brill v. Bank of America, N.A.*, No. 2:16-cv-03817 (D. Ariz.) at ECF 26 (same request) & ECF 32 (granting same); *Krimes v. JPMorgan Chase Bank, N.A.*, No. 2:15-cv-05087 (E.D. Pa.) at ECF 49 (same request) & ECF 58 (granting same).

[12] *See, e.g., Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017); *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2018 WL 1710075, at *6 (N.D. Cal. Apr. 9, 2018); *Smith v. Fifth Third Bank*, No. 1:18-cv-00464-DRC-SKB, 2021 WL 11713313, at *10 (S.D. Ohio Aug. 31, 2021); *Soule v. Hilton Worldwide, Inc.*, No. CV 13-00652 ACK-RLP, 2015 WL 12827769 (D. Haw. Aug. 25, 2015); *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12 (D.D.C. 2014); *see also* Ex. B at ¶ 26 n.1.

[13] https://www.law.com/nationallawjournal/almID/1202636785489/

***The Lodestar Multiplier Is Reasonable.*** "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Rite Aid*, 396 F.3d at 305-306; *see Lindy*, 540 F.2d at 117 (multiplier reflects "the contingent nature of [the suit's] success" and the "delay in the receipt of payment for services rendered"). Multipliers up "to four are frequently awarded." *See, e.g., In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001).

Here, Class Counsel requests a modest 1.98 lodestar multiplier.[14] This is well within the range approved by courts in this Circuit.[15] Thus, the lodestar cross-check supports Plaintiff's fee request.

---

[14] Again, this multiplier is only reflective of time directly and substantially benefiting the Settlement Class. *See* Ex. A at ¶ 16; Ex. B at 7-8, 10. Were other time spent by counsel in *Mandel* included, the multiplier would be negligible.

[15] *See, e.g.*, *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 18-cv-1007, 2019 WL 5394751, at *11 (W.D. Pa. Oct. 22, 2019) (2.54 multiplier); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No 08-0235, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019) ("Multiplier numbers ranging from one to four have been awarded in this Circuit when the lodestar method is applied to common fund cases."); *Keller v. TD Bank, N.A.*, Civ. A. No. 12-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 14, 2014) (approving "multiplier of slightly above 3"); *In re Schering-Plough/Merck Merger Litig.*, No. 09-cv-1099, 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) ("multiplier of 2.18 is not uncommon"); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *16 n.9 (E.D. Pa. June 2, 2004) (3.67 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, Civ. A. No. 03-4587, 2005 WL 1213926, at *16 (E.D. Pa. May 20, 2005) ("The 2003 Class Action Reporter survey found that the average lodestar multiplier was 4.5 . . . ").

## IV.   THE COSTS REQUESTED ARE REASONABLE AND WERE NECESSARILY INCURRED

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-0235, 2019 WL 4877563, at *8 (D.N.J. Oct. 3, 2019) (internal quotation marks and citation omitted); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).

Plaintiff seeks a total of $25,465.85 in litigation costs. *See* Ex. A at ¶ 12. This sum corresponds to certain actual out-of-pocket costs that Class Counsel necessarily incurred in connection with the prosecution of this litigation. *Id.* Such costs are compensable in a class action. *See* Fed. R. Civ. P. 23(h).

The categories of expenses for which Plaintiff's Class Counsel seek reimbursement are the type of expenses routinely charged to paying clients and, therefore, the full requested amount should be reimbursed. *See* Ex. A at ¶ 12; Ex. B at ¶ 34. These expenses include but are not limited to: filing and service fees; photocopies; mediation fees; expert fees; and travel expenses. *Id.* These expenses are reasonable and justified. *See, e.g., Lincoln*, 2019 WL 4877563, at *8 (approving $1,850,000 in similar costs); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014) (approving $304,996.65 in similar costs); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving $98,553.95

22

in similar costs).

## V.   THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Sullivan*, 667 F.3d at 333 n.65 (internal quotations omitted).  "It is particularly appropriate to compensate named representative plaintiffs with incentive awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class." *Fleisher v. Fiber Composites, LLC*, Civ. A. No. 12-1326, 2014 WL 86641, at *15 (E.D. Pa. Mar. 5, 2014) (internal quotations omitted)

The service award requested here for Plaintiff, the sole class representative in this case, is reasonable and appropriate. Plaintiff committed time and effort to this Action, and bore the risks involved in prosecuting this action. *See* Ex. A at ¶ 17. The service award requested is $15,000, consistent with the Settlement.  *See* ECF 25-1 at ¶ 2.4.  The notice informed Settlement Class Members about this.

The service award requested falls well within the range approved in other cases.  *See, e.g.*, *Lincoln*, 2019 WL 4877563, at *9 ("the Court finds the proposed $15,000 service awards to each of the two named plaintiffs to be fair and reasonable, and not excessive."); *Haught v. Summit Res., LLC*, No. 1:15-cv-0069, 2016 WL 1301011, at *7 (M.D. Pa. Apr. 2016) (approving $15,000 in service awards for class representatives, noting that service awards typically range "from $1,000 to $50,000"

each); *In re Remeron End–Payor Antitrust Litig.*, No. 02–2007, 2005 WL 2230314, at \*32-33 (D.N.J. Sept. 13, 2005) (approving $30,000 service award); *see also* 4 *Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000). The service award also represents less than 0.6% of the monetary relief available to the Settlement Class. The service award requested here is reasonable.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion for attorneys' fees, costs, and service award.

Dated: January 4, 2024

Respectfully Submitted,

*/s/ Ruben Honik*
Ruben Honik
David J. Stanoch, Of Counsel
Honik LLC
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 267-435-1300
ruben@honiklaw.com
david@honiklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, I caused a true and current copy of the foregoing to be filed and served upon all counsel of record by operation of the court's CM/ECF system.

Dated: January 4, 2024                     */s/ Ruben Honik*
                                                        Ruben Honik