UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA NIXON, individually, and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br><br>GRANDE COSMETICS, LLC,<br>    Defendant | Case No. 1:22-cv-06639 |

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND INCORPORATED
MEMORANDUM OF LAW

I.   INTRODUCTION

Plaintiff Brenda Nixon respectfully moves for final approval of the class action settlement (the "Settlement"), which will resolve Plaintiff's and all proposed Settlement Class Members' claims in this action concerning the marketing of GrandeLASH-MD Lash Enhancing Serum, GrandeBROW Brow Enhancing Serum, and GrandeHAIR Enhancement Serum ("the Products" or "the Serums"). Defendant Grande Cosmetics, LLC ("Grande") does not oppose this motion.

On December 14, 2023, this Court preliminarily approved the Settlement and set a final approval hearing for March 13, 2024 (see ECF 47). Per the Court's preliminary approval order, class notice was disseminated pursuant to the

1

Settlement. *See* Ex. A hereto (Angeion Decl.). The Administrator disseminated 196,101 direct notices via email, and another 201,981 direct notices via mail, to Settlement Class Members. *Id.* ¶¶ 6-8. The robust online publication notice program resulted in more than 28 million of impressions. *Id.* ¶ 11. The settlement website has had more than 1.4 million page views. *Id.* ¶ 24. No objections were filed. *Id.* ¶ 33. The penetration of the web-driven publication notice program was highly successful, resulting in an approximate reach of 83.26% with an average frequency of 5.69 times each. *Id.* ¶¶ 11-12. This exceeds the aspirational ~70% reach noted by the Federal Judicial Center. *Id.* ¶ 14.

Plaintiff submits the Court should grant final approval because the Settlement provides substantial relief for the Settlement Class, and the Settlement's terms are fair, reasonable, and adequate. For these reasons, discussed more fully below, Plaintiff respectfully asks the Court to grant Final Approval and enter Final Judgment.

## II.   CASE BACKGROUND

Plaintiff commenced this action by filing a putative class action complaint on November 16, 2022, styled as *Nixon v. Grande Cosmetics, LLC*, No.1:22-cv-06639 (D.N.J.) ("*Nixon*"). Plaintiff's complaint alleges that Grande misleadingly sold dangerous beauty products (GrandeLASH-MD Lash Enhancing Serum, GrandeBROW Brow Enhancing Serum, and GrandeHAIR Enhancement Serum (the

2

"Products" or the "Serums")) that were, in reality, unapproved dangerous drugs and products that posed serious undisclosed risks. *See* Compl. (ECF 1), ¶¶ 1-2. Plaintiff and other putative class members were deceived into believing the Serums were mere cosmetics that enhance the appearance of eye lashes, brows, or hair. Defendant's Serums contained a dangerous active ingredient, isopropyl cloprostenate ("ICP"). *Id.* ¶ 3. ICP possesses dangerous side effects, which Defendant did not disclose. *Id.* Further, the presence of an active ingredient rendered the Serums unapproved new drugs. *Id.* ¶¶ 4-5.

Plaintiff's complaint in this matter, *Nixon*, seeks economic and injunctive relief on behalf of a proposed nationwide class due to Grande's alleged wrongful actions, which Plaintiff alleges constitute violations of state consumer protection laws (Count I), fraud (Count II), negligent misrepresentation and omission (Count III), breaches of express and implied warranty (Counts IV & V), negligence (Count VI), and unjust enrichment (Count VII). The *Nixon* case does not allege personal injury or other harm caused by the Serums. Any claims for personal injury, therefore, are expressly excluded from the claims released in the Settlement.

### III. OVERVIEW OF SETTLEMENT

This same section, except for the update on notice and attorneys' fees and costs, was included in Plaintiff's motion for preliminary approval. It is included here again for completeness.

### A. The Settlement's Key Terms

The Settlement contemplates the following settlement class:

[A]ll current and former persons in the United States or its territories who purchased GrandeLASH-MD, GrandeBROW, or GrandeHAIR for personal, family, household, or professional purposes between January 1, 2018 and the date of the entry of an order granting preliminary approval to the Settlement Agreement excluding (a) any individuals other than Plaintiff Brenda Nixon who have pending litigation against Grande; (b) any Settlement Class Members who file a timely request for exclusion; (c) any officers, directors, or employees, or immediate family members of the officers, directors, or employees, of Defendant or any entity in which Defendant has a controlling interest; (d) any person who has acted as a consultant of Defendant; (e) any legal counsel or employee of legal counsel for Defendant; (f) any federal, state, or local government entities; and (g) any judicial officers presiding over the Action and the members of their immediate family and judicial staff.

ECF 25-1 at ¶ 1.31. The Settlement provides that Grande will create a non-reversionary settlement fund of $6,250.000. *Id.* at ¶ 1.36. From this amount, each eligible Settlement Class Member will be entitled to receive an initial settlement payment of up to $150, *id.* at ¶ 2.2(a), and potentially more if a supplemental settlement distribution becomes necessary, *id.* at ¶ 2.2(b). Additionally, Grande will be making changes and enhanced disclosures on the Products' labels and related marketing materials (e.g., its website) about the Products' ingredients. *Id.* at ¶ 2.3 & Ex. E to Settlement. This includes expanded warnings on the packaging, product insert, and website for the Products. *Id.*

As consideration for the monetary and injunctive relief, Grande will receive a release from each Settlement Class Member as more specifically delineated in the

4

Settlement with respect to claims that were or could have been alleged in the *Nixon I* action relating to the Serums. ECF 25-1 at ¶ 3.1. The release explicitly excludes any individual personal injury or disease claims, including both existing claims as well as latent or unknown claims. *Id.* at ¶¶ 3.1, 3.3. Also excluded are any individuals with pending claims of any kind against Grande. *Id.* at ¶ 1.31.

The Settlement provides that Plaintiff may seek attorneys' fees of up to one-third of the settlement fund plus costs, and also may seek a service award for Plaintiff up to $15,000. *See* ECF 25-1 at ¶ 2.4. Any service award, attorneys' fees, and costs will be paid by from the monetary relief available to the Settlement Class, along with notice and claims administration fees. *Id.* at ¶ 2.5. Notice and administration costs are to be deducted from the settlement fund, which is typical for a case and notice program of the sizes here.

### B. Notice and Claims Administration

The implementation and success of the court-approved notice program is discussed in Part V, *infra*.

### C. Attorneys' Fees, Costs and Service Award

Plaintiff filed her motion for attorneys' fees, costs, and service award on January 8, 2024, seeking: (1) an award of attorneys' fees in the amount of $2,000,000, representing 31.25% of the settlement fund and producing a modest lodestar multiplier of 1.98; (2) reimbursement of the $25,465.85 in expenses Class

5

Counsel have incurred to prosecute this case; and (3) a $15,000 service award to the named Plaintiff for the time and effort she has devoted to this case. *See* ECF 48. Plaintiff's requests are consistent with the terms of the Settlement preliminarily approved by this Court. *See* ECF 47.

## IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

A court should approve a settlement upon finding it is "fair, reasonable and adequate." Fed. R. Civ. P. 23 (e)(2). For final approval, the Third Circuit identified the following factors a court may consider in evaluating the fairness of a proposed settlement:

1. The complexity, expense and likely duration of the litigation;
2. The reaction of the class to the settlement;
3. The stage of the proceedings and the amount of discovery completed;
4. The risks of establishing liability;
5. The risks of establishing damages;
6. The risks of maintaining the class action through the trial;
7. The ability of the defendants to withstand a greater judgment;
8. The range of reasonableness of the settlement fund in light of the best possible recovery; and
9. The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

Since *Girsh*, the Third Circuit has also identified certain additional, illustrative factors that courts may consider as well:

1. the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other

6

      factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
2. the existence and probable outcome of claims by other classes and subclasses;
3. the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants;
4. whether class or subclass members are accorded the right to opt out of the settlement;
5. whether any provision for attorneys' fees are reasonable; and
6. whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).  The *Girsh* and *Prudential* factors favor final approval, as set forth in Parts IV.B-C, *infra*.

### A. The Settlement is Presumptively Fair

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002).  This is due in part to public policy strongly favoring the pretrial settlement of class action lawsuits.  District courts are mindful of the strong judicial policy favoring settlements. *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595-96 (3d Cir. 2010) ("strong presumption" in favor of class settlements).  Here, experienced counsel for both sides, well-versed in the strengths and weaknesses in this case based on discovery, engaged in arm's length negotiations.  This effort eventually resulted

7

in the settlement, and as such the settlement carries a presumption of fairness given its arm's-length negotiation. *See, e.g.*, *Ehrheart*, 609 F.3d at 594.

### B. The *Girsh* Factors Favor Final Approval

The *Girsh* factors, as set forth *supra*, support final approval. Plaintiff addresses these factors below.

***The complexity, expense and likely duration of the litigation.*** This factor focuses on "the probable costs, in both time and money, of continued litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). There is little doubt here that continued litigation of this matter would be expensive, complex, and time consuming. While Grande has produced a sizeable amount of documents and data, much discovery remains, including party depositions and third-party discovery. Additionally, for class certification, Plaintiff would need to retain experts for both liability (e.g., analysis of the chemical compositions and marketing for Grande's products) and damages (i.e., data analysis and damages modeling). All of this would be before merits experts, summary judgment, trial, and any appeal. This factor, therefore, favors settlement. *See, e.g.*, *Checchia v. Bank of Am., N.A.*, No-21-3585, 2023 WL 6164406, at *5 (E.D. Pa. Sept. 21, 2023)

***The reaction of the class to the settlement.*** This factor "attempts to gauge whether members of the class support settlement." *In re Prudential*, 148 F.3d at

8

318. Reaction to the Settlement has been overwhelmingly positive. While claims review remains ongoing, based upon initial analysis approximately 202,904 claims have been preliminarily assessed to be valid, with another 16,068 pending manual review of proof of purchase. *See* Ex. A at ¶ 27.[1] Only 95 requests for exclusion were received. Ex. A at ¶ 32. No objections were filed. *Id.* ¶ 33. All of this militates in favor of final approval. *See, e.g.*, *Molly v. Aetna Life Ins. Co.*, No. 19-3902, 2024 WL 290283, at *3 (E.D. Pa. Jan. 25, 2024) (granting final approval, noting lack of objections).

***The stage of the proceedings and the amount of discovery completed.*** This factor focuses whether the parties "have an adequate appreciation of the merits of the case before negotiating" a settlement. *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). As explained in Plaintiff's motion for preliminary approval, both sides were adequately informed about the merits of the case. The parties exchanged substantial information, data, and documents between them prior to

---

[1] Although Angeion has received 4,761,896 claims form submissions, approximately 4,542,954 have been initially rejected as they are deemed potentially fraudulent or otherwise invalid. *Id.* ¶ 27. Angeion has implemented its own system, AngeionAffirm, to detect fraudulent or aberrant claim submissions as part of Angeion's comprehensive anti-fraud efforts. *Id.* ¶¶ 29-30. In addition, in this case Angeion also has collaborated with a third-party vendor to deploy the latter's proprietary software to bolster further the analysis of potentially fraudulent activity in connection with the claims submission process. *Id.* ¶ 31. Angeion will submit a supplemental declaration prior to the Final Approval Hearing with updates on the total number of valid claims. *Id.* ¶ 28.

agreeing to the Settlement. Grande produced to Plaintiff every single page of the 7,230 pages it had produced in *Alexandra Mandel v. Grande Cosmetics, LLC*, Case No. 3:22-cv-00071 (N.D. Cal.) ("*Mandel*"), as well as documents updating the sales information for the Serums. *See* ECF 25-4 (Honik Decl.). This includes, e.g., materials about Grande's existing labeling and marketing for the Products; sales data for the Products; and manufacturing, safety, and complaint data concerning the Products. *Id.* Moreover, Grande produced to Plaintiff here additional documents beyond that which Grande produced in *Mandel*, to provide the groundwork for the enhanced notice program to increase reach and claims rate, *see id.*

This discovery directly relates to the claims at issue in this case. Thus, it is more than sufficient to provide each side with an "adequate appreciation for the merits of the case." *In re Prudential*, 148 F.3d at 319.

***The risks of establishing liability, and the risks of establishing damages.*** The fourth and fifth *Girsh* factors collectively "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of the immediate settlement." *In re Prudential*, 148 F.3d at 319. In considering these factors, "a court should not conduct a mini trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *In re Lucent Techs, Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 644-45 (D.N.J. 2004).

10

As Plaintiff noted in her motion for preliminary approval, she is confident in the strength of her claims and the prospect of class certification. That said, Plaintiff acknowledges that two very recent appellate decisions that arguably suggest claims such as those alleged here could be impliedly preempted: *DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35 (1st Cir. 2023) and *Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 148 F. 4th 1040 (9th Cir. 2022). While these out-of-circuit cases are not controlling here, and Plaintiff believes they are distinguishable, the reality is Grande has yet to file a motion to dismiss in this case and, therefore, Plaintiff would need to contend with Grande's likely preemption arguments based on *DiCroce* and *Nexus*, as Grande indicated in its pre-motion letter filed in this matter. A very real possibility exists that, absent the Settlement, the Settlement Class Members would receive no relief here or otherwise. In short, "but for the Settlement, Plaintiff[] and the class face[] a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).

***The risks of maintaining the class action through the trial.*** Per the Third Circuit, this factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535. Again, Plaintiff is confident in her claims and the prospect

11

of class certification. Yet, Plaintiff acknowledges the increasingly difficult task of certifying a merits class in this Circuit and District, in which several recent decisions highlight significant challenges and pitfalls in consumer cases such as this one, including ascertainability and predominance. *See, e.g.*, *Bennett v. Quest Diagnostics, Inc.*, No. 17-1590, 2023 WL 3884117 (D.N.J. June 8, 2023) (denying certification of consumer class). This factor weighs in favor of settlement.

***The ability of the defendants to withstand a greater judgment.*** This factor is most relevant where a settlement "is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011); *see In re Cendant*, 264 F.3d at 240. This situation does not apply here. The Settlement was negotiated without regard to Grande's ability to pay, or with any consideration given to Grande's financial health. Moreover, as Plaintiff explained in her motion for preliminary approval, the Settlement does not involve a below-value amount. *See* Pl.'s Mem. (ECF 25) at 18, 29 & Ex. D (ECF 25-4) thereto. This fact, combined with the absence of any reason to believe Grande faces any financial instability and that such was a consideration in negotiations, means this *Girsh* factor is irrelevant or neutral. *Reibstein*, 761 F. Supp. 2d at 254; *see also, e.g.*, *McIntyre v. RealPage, Inc.*, No. 18-3934, 2023 WL 2643201, at *2 n.4 (E.D. Pa. Mar. 24, 2023) ("[A settlement

12

less than that ordinarily awarded] does not appear to be an issue here, so this factor is neutral.").

***The range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.*** The last two *Girsh* factors focus on whether the settlement amount made available to class members and whether that is fair in light of the complexity, expense, and duration of litigation, the stage of the proceedings, and the likelihood of success at trial. *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010); *Girsh*, 521 F.2d at 157. As noted above and in Plaintiff's motion for preliminary approval, the Settlement's intended value to the class is well within the range of reasonableness. Thus, the last two *Girsh* factors favor settlement.

### C. The *Prudential* Factors Favor Final Approval

While the *Prudential* factors are illustrative only, *see* 148 F.3d at 323, these factors also support final approval. Although a number of these factors overlap the *Girsh* factors, Plaintiff addresses each of the *Prudential* factors below.

***The maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and***

13

***individual damages.*** This composite *Prudential* factor substantially overlaps with a number of the *Girsh* factors. As discussed *supra*, there was substantial merits discovery to allow the parties to assess the strengths and weaknesses of their claims and defenses. The balance of this composite factor, concerning experience adjudicating individual actions and scientific developments, do not apply here as this is not, e.g., a mass tort comprised of individual personal injury claims.

***The existence and probable outcome of claims by other classes and subclasses.*** This factor is neutral or irrelevant. With the voluntary dismissal of *Mandel*, the parties are unaware of any other putative class case filed by any other plaintiff in another state or federal court.

***The comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants.*** This *Prudential* factor is irrelevant or neutral. The parties are unaware of any other individual or class claims pending in any other forum.

***Whether class or subclass members are accorded the right to opt out of the settlement.*** The Settlement expressly affords all class members with the right to opt out. Therefore, this factor favors settlement.

***Whether any provision for attorneys' fees are reasonable***. Plaintiff has requested attorneys' fees in the amount of $2,000,000, or 31.35% of the settlement

14

fund. This is less than the amount provided for by the Settlement. *See* ECF 25-1 at ¶ 2.5 (one-third or 33.3%). As discussed in Plaintiff's motion for attorneys' fees, *see* ECF 48 at 4-21, Plaintiff's fee request is reasonable. Plaintiff notes the Settlement's fee provision is customary, and the fee percentage Plaintiff has requested is well within the range routinely upheld by the Third Circuit. *See, e.g.*, *Brown v. Kadence Int'l, Inc.*, No. 22-cv-1097, 2023 WL 6050215, at *5 (E.D. Pa. Sept. 15, 2023) (approving 35% award, and canvassing Third Circuit cases awarding fees between 20-45%).

***Whether the procedure for processing individual claims under the settlement is fair and reasonable.*** The Settlement satisfies this *Prudential* factor. The claims procedure contemplated by the Settlement is straightforward: each class member need only complete and submit a simple claim form to be signed under penalty of perjury. *See* Ex. A hereto (sample claim form). A claimant may receive a pro rata share in an amount up to $150.00 without proof of purchase, as well as additional amounts for multiple products with proofs of purchase.

## V. THE NOTICE PROGRAM WAS SUCCESFUL

For due process purposes, notice to class members must be reasonably calculated to reach absent class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The court-approved notice program was reasonably calculated to

15

reach Settlement Class Members and to apprise them of the information necessary to determine whether to participate, exclude themselves, or object.

The parties' chosen administrator, Angeion, successfully developed and administered the notice program to efficiently and adequately notify the class and administer claims. The short-form and long-form notices informed members of (i) the nature of the action; (ii) who is in the certified class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). The language of the notices were designed to be plain and easy to understand and provided neutral and objective information about the nature of the Settlement. This program satisfied due process, and is consistent with programs approved by other courts.

During the notice program, Angeion logged a robust response from potential Settlement Class Members. Angeion sent 194,096 direct email notices to potential Settlement Class Members for whom email addresses were available. *See* Ex. A at ¶ 6. Only 1,915 email notices were unable to be delivered. *Id.* Angeion also sent two sets of reminder email notices. *Id.* ¶ 7.

Angeion also sent 201,981 direct mail notices, postage prepaid to potential

Settlement Class Members for whom mailing addresses were available. *Id.* ¶ 8. Prior to mailing, the addresses were processed through the USPS National Change of Address database to update any information for individuals who have moved within the last four years and filed a change of address card with the USPS. *Id.* The USPS has returned 260 mailed notices as undeliverable with a forwarding address and has returned 6,059 mailed notices as undeliverable without a forwarding address. *Id.* ¶ 9. The 260 mailed notices were re-mailed to the forwarding addresses provided by the USPS. *Id.* The mailed notices returned without a forwarding address were subjected to an address verification search ("skip trace") to locate updated addresses. *Id.* In total, 3,919 updated addresses were identified via the skip trace efforts and Mailed Notices were remailed to those updated addresses. *Id.*

The Court will recall the Settlement also contemplated a robust online notice program component. This program did not disappoint. There were approximately 28,590,548 impressions driven by the online media publication campaign. Ex. A at ¶ 11. The settlement class website has had more than 1.4 million page views and 1,083,4443 sessions, which represents the number of individual sessions initiated by all users. *Id.* ¶ 24. The toll-free number has received 914 calls for a total of 3,819 minutes. *Id.* ¶ 26.

Ultimately, while claims review remains ongoing, based upon initial analysis approximately 202,904 claims have been preliminarily assessed to be valid, with

17

another 16,068 pending manual review of proof of purchase. *See* Ex. A at ¶ 27.[2] By any measure, this is a successful result. The Administrator will provide Class Counsel further information by way of a supplemental declaration to share prior to the final approval hearing about the valid claim count and estimated award amounts. *See* ECF 47 (supplemental memorandum due March 6, 2024).

## VI.    FAIRNESS HEARING

Plaintiff will be prepared to further present and discuss the Settlement, Notice Program, and claims administration process during the upcoming fairness hearing, currently scheduled for March 13, 2024 at 10:00 am, at which time Class Counsel will request that the Court enter a Final Approval Order as to the Settlement.

## VI.    CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant final approval of the Settlement, confirm certification of the Settlement Class, and enter the attached proposed final approval order and final judgment.

                                                        Respectfully Submitted,

                                                        */s/ Ruben Honik*
                                                        Ruben Honik
                                                        David J. Stanoch, Of Counsel
                                                        Honik LLC
                                                        1515 Market Street, Suite 1100
                                                        Philadelphia, PA 19102

---

[2] *See supra* n.1.

Tel: 267-435-1300
ruben@honiklaw.com
david@honiklaw.com

Case 1:22-cv-06639-RMB-MJS    Document 49    Filed 02/26/24    Page 19 of 20 PageID: 866

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused a true and current copy of the foregoing to be filed and served upon all counsel of record by operation of the court's CM/ECF system.

Dated: February 26, 2024            /s/ David J. Stanoch
                                                           David J. Stanoch