UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA NIXON, individually, and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br><br>GRANDE COSMETICS, LLC,<br>    Defendant | Case No. 1:22-cv-06639 |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

Per this Court's preliminary approval order (ECF 47), and extension order (ECF 51), Plaintiff respectfully files this supplemental memorandum in further support of her motion for attorneys' fees, costs, and service award.

This Court granted preliminary approval of the parties' proposed Settlement on December 14, 2023 (ECF 47). Plaintiff filed her motion for attorneys' fees, costs and service award on January 4, 2024 (ECF 48). Plaintiff filed her motion for final approval of the Settlement on February 26, 2024 (ECF 49). At that time, the claims filing deadline of February 27, 2024 had not yet passed. *See* 12/14/23 Order (ECF 47) at 13. This supplemental memorandum provides an additional update about the

1

notice and claims administration process now that the claims submission, exclusion, and objection deadlines have all passed.

As first reported in Plaintiff's motion for final approval (ECF 49), no objections to the Settlement were received. Angeion, the court-approved notice and claims administrator, has reconfirmed this. *See* Ex. A (Angeion Decl.) at ¶ 5. There were 96 requests for exclusions. *Id.* at ¶ 4. A list of the opt-outs which can be appended to a final approval order is attached to the Angeion Declaration submitted herewith.

As of the close of the claim submission deadline, Angeion has received 6,526,866 timely claim submissions. *Id.* at ¶ 6. Based upon Angeion's initial analysis, approximately 143,858 claims have been preliminarily assessed to be valid. *Id.* at ¶ 7. Another 32,180 claims are pending manual review of proof of purchase. *Id.* This combined number of 176,038 initially-valid claims represents approximately 17.6% of the total class size of approximately 1,000,000 consumers that Grande Cosmetic estimated earlier. *Id.* By any measure, a 17.6% claims rate in a consumer class action settlement is a marked success, and speaks to the robust notice program implemented by the parties and with the Court's prior approval. *See, e.g.*, *Rael v. Children's Place, Inc.*, No. 16-cv-0370, 2020 WL 434482, at *9 (S.D. Cal. Jan. 28, 2020) (collecting cases with claims rates between 0.23% and 2.07%, and in which final approval was granted); *see also Keil v. Lopez*, 862 F.3d 685, 696-

97 (8th Cir. 2017) (untroubled by 2-3% claims rate); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) ("consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns").[1]

The number of facially rejectable claims unfortunately stems from obviously fraudulent or suspicious claim submission practices. As originally noted in Plaintiff's motion for final approval, Angeion utilizes industry-standard practices as well as its own proprietary tool, AngeionAffirm, to detect fraudulent claim submissions. *Id.* at ¶ 9. Key highlights of AngeionAffirm include:

> (1) The implementation of enhanced, machine learning based fraud prevention mechanisms on all Web Application Firewalls focused on detecting and blocking fraudulent activities even before they infiltrate the system; (2) Employing advanced artificial intelligence to identify bot and scripted browser traffic; (3) Performing proprietary behavioral analysis techniques to identify abnormal patterns that could indicate fraudulent submissions, to help ensure that claims are genuine and justifiable; (4) Analyzing a broad array of technical characteristics garnered from claimant email addresses and other digital fingerprints to determine a claim's propensity for fraud; (5) Deploying a dynamic IP monitoring system to identify and flag suspicious activities across all case engagements; (6) Analysis of over one hundred million claims, which has proven instrumental in identifying characteristics, anomalies, and known bad actors, that may signify fraudulent intent, thus ensuring only bona fide claims are approved; and (7) Utilization of multiple security measures to address the increasing scale and sophistication of cyber criminals' adaptive behavior.

---

[1] Further, as courts have recognized, even if a large number of class members "did not exercise their right to share in the fund, their opportunity to do so was a benefit to them. " *Keil*, 862 F.3d at 697 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.")).

*Id.* at ¶ 9 & n.1. Angeion has successfully deployed AngeionAffirm in numerous prior engagements, including many settlements larger in terms of dollar value and numbers of claimants, to detect and vet-out fraudulently submitted claims. *Id.* at ¶¶ 9-11. Courts regularly rely on "techniques tailored by the parties" to mitigate the risk of "mistaken or fraudulent claims." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (7th Cir. 2015).

The high percentage of rejectable claims in this matter is consistent with the percentages Angeion has seen in other settlements of equal or greater size. *See* Ex. A at ¶ 10. Using the same processes and tools described above, Angeion has successfully detected and prevented millions of fraudulent claims from diluting amounts payable to valid claimants in many other settlements in which the percentages of fraudulent submissions were equal to or greater than that here. *Id.* Examples are set forth in the attached Angeion Declaration. *Id.*[2]

As a further safeguard, at the parties' behest, Angeion also collaborated with a strategic partner, ClaimScore, to deploy the latter's proprietary software to bolster further the analysis of potentially fraudulent activity in connection with the claim

---

[2] Fraudulent practices during claims submissions is an ever more frequent issue nationwide. For instance, as reported just yesterday, Judge Orrick, who is overseeing the JUUL MDL in the Northern District of California, granted final approval of a $45.5M settlement that had encountered 11 million fraudulent claims. *See generally In re Juul Labs Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:19-md-02913 (N.D. Cal.).

submission process. *Id.* at ¶ 11. ClaimScore is a data analysis firm that specializes in, *inter alia*, anti-fraud efforts in claims administration. *Id.* ClaimScore uses a proprietary software algorithm as described in the attached Declaration. *Id.* Here, as a cross-check of Angeion's own AngeionAffirm and other anti-fraud measures, ClaimScore's proprietary software was deployed as well. Together, these efforts identified a number of obvious fraudulent practices in connection with the online claim submission process. Examples include the use of fake names and mailing addresses, and programmatically generated email addresses. *Id.* Angeion and ClaimScore's combined efforts resulted in 176,038 claims initially being considered valid, subject to further analysis.[3] *Id.*

Other information further supports Angeion's preliminary determination that there are approximately 176,038 valid claims pending further review.

First, Class Counsel has been contacted by individuals who received claim submission confirmation emails, but who never submitted any claims. That is, individuals' names and emails addresses were spoofed or stolen to submit fake claims. One example is reflected in Exhibit B hereto, in which a male individual confirmed to Class Counsel that he never purchased Grande Cosmetics' products, never visited the settlement website, and never submitted any claims. Yet, he

---

[3] Validation of the combined analyses motivated the need for the one-day extension to submit this supplemental memorandum. *See* ECF 51.

received 20 emails confirming submission of 20 claims made under his name. Ex. B. Someone fraudulently used the individual's name and email address. *Id.* The individual himself added: "The big clue that it's a scammer is the time stamps, all claims were timestamped between 3:30 AM and 4 AM on February 28th, one day ahead of us here in America. I suspect it's someone operating out of India." *Id.*

Second, based on its own sales and other data, Grande Cosmetics earlier estimated the class size to be approximately 1,000,000 consumers. *See* ECF 25 at 4. Angeion's initial determination that approximately 176,038 claims are valid represents approximately 17.6% of Grande Cosmetics' earlier estimate of the total class size. That 176,038 out of 1,000,000 consumers, or approximately 17.6%, submitted claims is much more plausible and consistent than the dubious possibility that over 6 million people, or six times Grande Cosmetics' own top-estimate of the class size, not only exist, but that all of them submitted claims. Furthermore, given the 1,000,000 estimate for the class's size, 176,038 claims represents a 17.6% claims rate, which in itself is remarkable for a consumer class action settlement.

Third, 176,038 valid claims is much more in line with the number of claims submitted in the *Rodan & Fields* settlement. Recall that Rodan & Fields settled a nationwide consumer class action involving their own lash product in 2022. Rodan & Fields has a much larger market share in this segment than Grande Cosmetics, reflected in part by the size of the monetary relief made available in the *Rodan &*

6

*Fields* settlement (i.e., $38 million in cash and coupon, as opposed to $6.25 million all in cash here). Yet, only 105,483 valid claims were submitted in the *Rodan & Fields* settlement. *See* Ex. C. That is, Angeion's initial assessment that 176,038 claims are valid is consistent with the real-world claims experience in *Rodan & Fields*. In fact, the 176,038 initially-valid claims here is greater than the number of valid claims in *Rodan & Fields*.

Of course, the parties here had agreed to a much more robust notice program than the one in *Rodan & Fields*. The notice program here included 201,981 direct mail notices and 194,096 direct email notices sent to potential Settlement Class Members, based on mailing and email address data maintained by Grande Cosmetic. And of course the notice program here included a number of enhancements to routine notice efforts, such as you YouTube advertisements, first-party targeting, and promotion through a social media legal influencer (*see, e.g.* ECF 42-2). But even assuming the notice program was successful (and it was), it is inconceivable that ~57 times the number of eligible claimants submitted claims in this Settlement than the number of valid claims submitted in the much larger *Rodan & Fields* settlement.

In sum, Angeion and Class Counsel have taken robust steps to ensure that only valid claimants share in the settlement fund.

After Angeion completes its full review, it is possible some claims initially determined to be valid are not, or vice versa. *See* Ex. A at ¶ 14. But such ordinary-

course claims administration work is unlikely to result in a statistically significant change, up or down, in the number of valid claims.

In terms of estimated payments per valid claimant, a conservative estimate is that each valid claimant will receive approximately $17.26 per valid claim. *See* Ex. A at ¶ 13. This estimate conservatively assumes that 100% of the 176,038 claims that Angeion has preliminarily assessed to be valid are, in fact, valid. *Id.* The conservative estimate of $17.26 per valid claim represents substantial value to valid claimants, and is in line with amounts received in other consumer product class settlements. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588 (N.D. Cal. 2020) (granting final approval of $6.25M settlement, coming out to approximately $4/claim, and approving $2M fee request; both settlement amount and fee request are identical to those here); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (~$3/claim).

In sum, Angeion and Class Counsel have taken robust steps to ensure that only valid claimants share in the settlement fund. Plaintiff respectfully submits that the preliminary analysis by the claims administrator further supports final approval, as well as the requested attorneys' fees, costs, and service award. Class Counsel will be prepared to discuss the issues herein at the upcoming Final Approval Hearing on March 13, 2024 at 10:00 a.m.

8

Dated: March 7, 2024

                    Respectfully Submitted,

                    */s/ Ruben Honik*
                    Ruben Honik
                    David J. Stanoch, Of Counsel
                    Honik LLC
                    1515 Market Street, Suite 1100
                    Philadelphia, PA 19102
                    Tel: 267-435-1300
                    ruben@honiklaw.com
                    david@honiklaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I caused a true and current copy of the foregoing to be filed and served upon all counsel of record by operation of the court's CM/ECF system.

Dated: March 7, 2024                     */s/ Ruben Honik*
                                         Ruben Honik