# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA NIXON, individually, and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br><br>GRANDE COSMETICS, LLC,<br>    Defendant | Case No. 1:22-cv-06639 |

# GRANDE COSMETICS, LLC'S SUPPLEMENTAL STATEMENT OF NON-OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

136983644v.2

## I. INTRODUCTION

Defendant Grande Cosmetics, LLC ("Grande") submits this supplemental statement of non-opposition in response to the Court's request at the hearing on March 13, 2024 for additional briefing on issues relating to the proposed class action settlement and in response to Plaintiff Brenda Nixon's Memorandum In Further Support of Plaintiff's Motions for Final Approval, and for Attorneys' Fees, Costs and Service Award (Dkt. No. 60) filed on April 3, 2024.

Plaintiff's request for final approval of the proposed class settlement should be approved because the settlement is fair, reasonable, and adequate. The settlement (1) satisfies the factors enumerated in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) and *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998); (2) comparatively, provides the class significantly better monetary relief than the negotiated settlement reached in the related lawsuit filed in the Northern District of California—*Alexandra Mandel v. Grande Cosmetics, LLC*, Case No. 3:22-cv-00071 (N.D. Cal.) ("*Mandel*")—in which the court denied a prior proposed class settlement involving the same class with the same allegations of wrongdoing against Grande; and (3) takes into account the substantial risk to Plaintiff and the putative class of further litigation in light of recent caselaw in other jurisdictions that have dismissed similar state law claims based on federal preemption.

## II. THE PROPOSED SETTLEMENT IN THIS CASE PROVIDES SUPERIOR RELIEF FOR THE CLASS THAN THE DENIED *MANDEL* SETTLEMENT

At the hearing on March 13, 2024, the Court requested the parties provide a comparison of the pending settlement before the Court to the settlement reached in the related *Mandel* lawsuit in which the court denied a prior proposed class settlement involving the same class with the same allegations against Grande. (3-13-24 Tr. at pp. 6, 7 and 10.)

Both this lawsuit and *Mandel* allege Grande's cosmetic serums GrandeLASH-MD, GrandeBROW, and GrandeHAIR (the "Products") are purported "unapproved drugs," and not cosmetics, and that putative class members were deceived because they believed the Products were cosmetics in violation of consumer protection laws. *Cf.* Dkt. No. 1 and *Mandel*, Dkt. No. 1. Both cases sought economic and injunctive relief on behalf of the respective proposed classes. *Id*. A prior settlement reached by Grande with the plaintiff in *Mandel* was denied, in part, because it included vouchers as part of the proposed settlement and because the court deemed the cash fund in the settlement insufficient. *Mandel*, Dkt. No. 75. Both of the issues identified in the order denying the *Mandel* settlement are addressed in the pending settlement before the Court which provides superior monetary relief for the class to the settlement reached in *Mandel* and removes entirely any "coupons" or "vouchers" as part of the settlement.

3

Many of the settlement terms in the two cases are the same. Both settlements proposed injunctive relief requiring specified revisions to the Product labels and packaging. Both settlements proposed total, non-reversionary settlement amounts of $6,250,000. The proposed settlement amount in *Mandel* consisted of a $5,000,000 cash settlement fund and a $1,250,000 credit settlement fund. *Mandel*, Dkt. No. 51-2 at ¶ 2. On the other hand, the pending settlement before this Court includes an *all cash* settlement fund of $6,250,000. Dkt. No. 25-1 at ¶ 2.1. In both cases, the costs for settlement administration, attorneys' fees and the class representative payment were to be paid from the cash settlement fund. *Mandel*, Dkt. No. 51-2 at ¶ 2.1; Dkt. No. 25-1 at ¶ 2.1.

The presiding judge in *Mandel,* the Hon. James Donato, denied without prejudice a Motion for Preliminary Approval of Class Action Settlement in part because 20% of the settlement's purported value ($1,250,000) came from "credit vouchers," which he believed provided no value to the class. *Mandel*, Dkt. No. 55. Judge Donato unambiguously stated he would not approve *any settlement* that included a credit fund. *Id*. Therefore, in light of Judge Donato's statements regarding "coupons" in the class settlement—and considering Third Circuit precedent on the issue (*In re GM Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 806-810 (3d Cir. 1995))—the parties in the pending case agreed to an *all cash* settlement that entirely eliminates any "vouchers" or credit, thereby adding

$1.25 million in additional value. Dkt. No. 25-1. Grande agreed to increase the cash settlement fund from the prior *Mandel* settlement by $1.25 million which provides more than a 50% increase in the available cash to pay class member claims in this case than would have been available in *Mandel* after payment of settlement administration expenses and class counsel fees. Specifically, the total cash available to pay class members' claims—after attorneys' fees, administration costs and class representative payment—increased from $2,010,959.15 to $3,260,959.15, as detailed in Plaintiff's supplemental brief (Dkt. No. 60 at p. 10).

The estimated settlement administration costs, plaintiff's counsel's fees and expenses, and class representative service payment for both cases were estimated to be nearly the same in both proposed settlements. *Mandel*, Dkt. No. 51-2 at ¶ 2.1; Dkt. No. 25-1 at ¶ 2.1. Therefore, the Net Settlement Fund proposed in this case— the amount that will actually be distributed to Settlement Class Members who submit a claim—was increased by the additional cash Grande has agreed to pay in this case, *i.e.* the additional $1.25 million in cash. The additional cash paid in the *Nixon* settlement provides each of the 109,402 claimants an additional $11.44. Therefore, instead of receiving an estimated $18.38[1] in a hypothetical *Mandel* settlement, each claimant will receive a monetary payment of $29.81[2] in the settlement in this case.

---

[1] $2,010,959.15 (total cash in *Mandel*) / 109,402 claimants = $18.38 per claim
[2] $3,260,959.15 (total cash in *Nixon*) / 109,402 claimants = $29.81 per claim

At the hearing on March 13, 2024, this Court also raised the question of whether class members would have been better off with an option to choose a "coupon" as provided for in the proposed *Mandel* settlement instead of a cash payment to allow them to receive the full amount of their purchase of the subject Grande Products. (3-13-24 Tr. at 17:2-3.) The answer is no. As discussed further below, even if this case was not dismissed on the basis of preemption, and even if a class were certified in this case and even if that class succeeded on the merits, it would not be entitled to damages based on a "full-refund" model. Any damages would be limited to the "price-premium" paid by consumers based on the alleged false and misleading claims made about the Products.[3] Regardless, Judge Donato gave *no value* to the credit fund proposed in the *Mandel* settlement. The Third Circuit, similarly, disfavors vouchers or coupons in class settlements as discussed in detail in Plaintiff's supplemental brief. Therefore, a settlement that provides for a $6.25 million cash fund is *de facto* superior to a settlement providing a $5 million cash fund.

The Court also requested an "apples to apples" comparison of the two settlements. (3-13-24 Tr. at 22:5-6.) A direct comparison cannot be made, of course, because the parties cannot know how many class members would have chosen a

---

[3] Plaintiff would not only need to survive a motion to dismiss based on federal pre-emption, certify a class, and prevail on the merits, she would also need to provide competent evidence of the amount of price-premium class members paid for the Products.

credit voucher if the *Mandel* settlement had been approved, rather than a cash settlement payment. However, in the *Lash Boost* settlement involving a competing lash serum sold by defendant Rodan + Fields in which the plaintiff made nearly identical allegations and upon which the pending settlement was modeled, only 9,298 of the 105,483 total claimants—or 8.8% of claimants—chose the credit benefit over the cash benefit. *See In re Lash Boost,* Case No. CJC-18-004981 (Superior Court of California, County of San Francisco); Dkt. No. 52-3 (Joint Status Report Regarding Plan of Distribution of Credit Settlement Fund Surplus) at p. 3. There is no reason to believe a similar percentage of claimants in this case would not choose a credit benefit if provided that option. Therefore, the 8.8% of the class members would, assuming they actually used the voucher, receive the full value of the Product they had purchased. The remaining 91.2% of claimants who chose the cash benefit, however, would see their payment reduced by about 38% from $29.81 to $18.38.

Finally, the settlement proposed in this case provided for a more robust Notice Plan than was proposed in *Mandel*. Both proposed settlements provide for direct notice by mail and email to every consumer that purchased any Product directly from Grande during the covered class period. *Mandel*, Dkt. No. 51-2 at ¶ 5.2; Dkt. No. 25-1 at ¶ 5.2. Because Grande's Products are sold primarily by third party retailers who do not obtain and/or maintain consumer information, the *Nixon* Notice Plan provided for alternative methods of notice online that were developed with the

assistance of an experienced class administrator, Angeion Group. Dkt. 25-1 at ¶ 5.2; Dkt. No. 42-2. To reach class members that purchased any Product from a third party retailer, the Class Notice Plan in this case included internet notice, publication notice, a settlement website, and a toll-free number. *Id*. The internet notice was provided in the form of a social media campaign and banner advertisements that directed potential class members to the settlement website to complete an online claim form. *Id*. at ¶ 5.2(c). In addition, Angeion implemented a notice program that included a digital media campaign component known as Programmatic Display Advertising ("PDA") and a paid search campaign as described in detail in the supporting declarations from Angeion. Dkt. No. 25-5; Dkt. No. 42-2. The Notice Plan in this case was therefore significantly more robust than provided for in the *Mandel* settlement as reflected by the claims rate.

### III. PLAINTIFF FACES NUMEROUS SIGNIFICANT HURDLES IN LITIGATION

Plaintiff faces significant hurdles if the proposed settlement is not approved, both in establishing liability and in proving any damages, let alone damages exceeding the amount claimants will receive if the proposed settlement is approved. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (identifying nine factors a court should consider when reviving proposed class action settlement including the risks of establishing liability and damages). These *Girsh* factors each weigh in favor of approving the proposed settlement.

8

### A. <u>Other Jurisdictions Have Found Similar Claims Preempted</u>

As Grande informed the Court at the hearing on March 13, 2024, if the pending settlement is not approved Grande does not intend to renegotiate a revised proposed settlement. (3-13-24 Tr. 32:25-33:12.) Grande will, instead, file a motion to dismiss, as it informed the Court it would do in its letter dated January 11, 2023, prior to reaching the settlement agreement in this case. *Nixon*, Dkt. No. 9. Specifically, Grande intends to move to dismiss all of Plaintiff's claims as impliedly pre-empted by the Federal Food, Drug, and Cosmetics Act ("FDCA"). *Id.* Since the date Grande submitted its letter to the Court about 15 months ago, the law on the pre-emption issue has become considerably more favorable for Grande's proposed motion as numerous courts in various jurisdictions have found claims such as Plaintiff's in this case preempted. Grande believes the Court would find Plaintiff's claims impliedly preempted by the FDCA, following the holding in cases in the First Circuit, Sixth Circuit and Ninth Circuit, as well as numerous trial courts that have addressed the same issue.[4]

Plaintiff's claims against Grande in this case are all based on her allegations that Grande's Products are "unapproved drugs," and not cosmetics as Grande claims, simply because they contain the ingredient isopropyl cloprostenate (IC). Dkt. No. 1

---

[4] The Third Circuit has not expressly addressed the identical issues Grande intends to raise in its motion to dismiss in this case.

(Compl., ¶¶ 1-3). The Complaint, therefore, is an attempt to privately enforce the federal pre-market New Drug Application ("NDA") process that is exclusively regulated by the U.S. Food and Drug Administration ("FDA"). Grande contends that Plaintiff's claims are pre-empted by the FDCA because there is no private right of action under the FDCA and enforcement power and discretion of the NDA process under the FDCA are exclusively committed to the FDA. *See* Dkt. No. 9 (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001)). The FDA, not this Court or a jury, has the expertise necessary to determine whether a given product is or is not a "drug" requiring FDA approval.

The Ninth Circuit addressed this identical issue in *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F. 4th 1040 (9th Cir. 2022) ("*Nexus*") in which the plaintiff alleged defendants' products violated state laws prohibiting the sale of drugs not approved by the FDA. *Id*. at 1044. That is, plaintiff alleged defendants were selling unapproved drugs without the requisite regulatory approval, just as Plaintiff's claims in this case allege against Grande. *Id*. The Ninth Circuit affirmed the district court's dismissal of plaintiff's claims for failure to state a claim and held the FDCA impliedly pre-empted plaintiff's claims. *Id.* at 1046, 1050-51 ("the fraud claims exist[ed] solely by virtue of the FDCA and not on traditional state tort law fraud predating the federal statute."). Plaintiff's causes of action against Grande in this case, just as the claims in *Nexus*, are based entirely on

a purported violation of the FDCA for allegedly selling the lash serum Products as cosmetics despite being "unapproved drugs." *Nixon*, Dkt. No. 1.

Other federal courts of appeals and district courts have consistently reached the same conclusion as the Ninth Circuit in *Nexus*, dismissing claims such as those asserted by Plaintiff in this case as pre-empted by the FDCA. *See DiCroce v. McNeil Nutritionals, LLC,* 82 F.4th 35, 40 (1st Cir. 2023) (plaintiff's claims that defendant violated the FDCA by mislabeling its supplements in violation of state laws were preempted). State law claims—including those for unfair or deceptive trade practices, false advertising, and unjust enrichment, as Plaintiff claims in this case—that "exist 'solely by virtue' of an FDCA infraction" are impliedly preempted by the FDA's statutory enforcement authority. *Id.* at 41; *see also Loreto v. Proctor & Gamble Co*. 515 F. App'x 576, 579 (6th Cir. 2013) ("plaintiffs may not use other federal statutes or state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA.").

Numerous district courts, including cases in the District of New Jersey, have also held state law claims based on violation of the FDCA are impliedly preempted.[5]

---

[5] *See Medford v. Eon Labs, Inc.*, No. 20-cv-00412, 2021 WL 5204035, at *5 (D.N.J. No. 9, 2021) (state law claims that exist solely by virtue of the FDCA requirements are impliedly preempted by federal law); *Roncal v. Aurobindo Pharma USA, Inc.*, No. 3:20-cv-02643, 2022 WL 1237888, at *5 (D.N.J. Apr. 27, 2022) (even if plaintiff only alleges state law claims, the FDCA regulatory scheme plays a "critical element" to all of her claims and thus still preempts the state law claims); *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.,* No. 8:23-cv-1503-WFJ-TGW, 2023 WL 7385819, at *3

In fact, several additional opinions issued in the last few months since the Court granted preliminary approval of the settlement in this case have applied *Nexus* in dismissing claims based on preemption. *See Bubak v. Golo, LLC*, No. 1:21-cv-00492-DAD, 2024 WL 86315, **3-4 (E.D. Cal. Jan. 8, 2024) (collecting cases) (finding *Nexus* intervening change in controlling law warranting reconsideration of its prior order and holding plaintiff's state unfair competition law claims preempted); *see also Wilson v. ColourPop Cosmetics, LLC*, No. 22-cv-05198-TLT, 2023 WL 6787986, *7 (N.D. Cal. September 7, 2023) (plaintiff's claims that defendant's cosmetic eyeshadow and eyeliner products were not safe was an attempt to enforce

---

(M.D. Fla. Nov. 8, 2023) (finding preemption where plaintiff "alleged no conduct that would 'give rise to liability under state law even if the [FDCA] did not exist"); *Chong v. Kind LLC*, No. 21-cv-04528-RS, 2022 WL 464149, at *4 (N.D. Cal. 2022) (claims relying on California Sherman Law impliedly preempted under *Buckman*); *In re Trader Joe's Tuna Litigation*, 289 F. Supp. 3d 1074, 1084-85 (C.D. Cal. 2017) ("under principles of implied preemption ... private litigants may not bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA."); *In re Epogen & Aranesp Off–Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290–91 (C.D. Cal. 2008) ("[P]laintiffs may not use other federal statutes or state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA."); *Exela Pharma Sciences, LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1012 (W.D.N.C. 2020) (state laws claim preempted if in substance it seeks to enforce the FDCA); *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) (under principles of "implied preemption" private litigants may not "bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA [.]"); *Autin v. Solvay Pharms., Inc.*, No. 05-2213, 2006 WL 889423, at *4 (W.D. Tenn. Mar. 31, 2006) (state law claim alleging product "cannot be sold legally because it is a new drug without FDA approval" was preempted).

FDCA regulations and were impliedly preempted even if the complaint scrubbed reference to the FDCA and the FDA).

The significant risk that Plaintiff's claims are deemed preempted weighs strongly in favor of approving the proposed settlement. *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) ("We concur with the District Court that this factor weighed in favor of settlement because class members 'face[d] stiff challenges surmounting the issues of preemption and causation.'").

**B.** **The Proposed Settlement Provides Class Members Greater Estimated Relief Than Any Reasonable Price Premium Damages**

As outlined by the Third Circuit in *Girsh*, this Court must consider several factors when determining whether to approve the class settlement. The last two *Girsh* factors are usually considered together and require the Court to evaluate "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *In re Prudential Ins. Co. of America Sales Pracs. Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998); *see also In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 538 (3d Cir. 2004) (court should consider "whether the settlement represents a good value for a weak case or a poor value for a strong case"). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *In re*

*AT&T Corp.*, 455 F.3d 160, 170 (3d Cir. 2006). "Rather, the percentage recovery must represent a material percentage recovery to [the] plaintiff in light of all the risks considered under *Girsh*." *Id.* "In order to assess the reasonableness of a settlement in cases seeking primarily monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Warfarin*, 391 F.3d at 537. As discussed in the previous section, Plaintiff's case faces significant risks in light of the substantial caselaw from various appellate and trial courts supporting Grande's potential motion to dismiss the lawsuit as preempted by the FDCA. This risk weighs in favor of finding the proposed settlement is adequate.

Even if Plaintiff survived Grande's motion to dismiss, she would still be required to demonstrate under Federal Rule of Civil Procedure 23(b)(3) that any damages alleged are capable of measurement on a class wide basis. *See Vizcarra v. Unilever United States, Inc.*, 339 F.R.D. 530, 553 (N.D. Cal. 2021) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013)). To meet the predominance requirement, the plaintiff must proffer a damages model showing that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp.*, 569 U.S. at 35. (plaintiffs must present a damages model consistent

with their theory of liability and measure "only those damages attributable to" the plaintiff's theory of liability).

Plaintiff concedes that class members are not entitled to a "full refund" of the purchase price of the Products since the Products unquestionably provide value. (3-13-24 Tr. 19:3-8.) Plaintiff would instead be limited to damages for the class based on a "price premium" theory of liability, *i.e.* the difference between what was paid for the Products and what a reasonable consumer would have paid at the time without the alleged fraudulent or misleading information. That is, the amount the purchaser would have paid at the time of purchase had the purchaser received all the relevant information and the product been labeled correctly. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).

Plaintiff has not yet proposed a damages model in this case. However, plaintiff's counsel in *Mandel*, who is also co-counsel of record in this case, acknowledged the "maximum realistic price premium associated with Grande's omissions and failure to warn would likely have been at most approximately 25% of the purchase price." *Mandel*, Dkt. 51-1 at ¶ 30. Plaintiff's supplemental brief acknowledges that 25% is the maximum price premium Plaintiff could realistically request in this case. Dkt. No. 60 at p. 11. ***The maximum price-premium for the most popular Grande Products that are the subject of this lawsuit, therefore, is $17, i.e. 25% of $68.***

The expected class payment of $29.81 represents a payment of 175% of the "best case" price premium damages ($17) if Plaintiff could overcome all the hurdles she faces and ultimately prevail at the end of the case. The expected payment each class member will receive, therefore, is significantly greater than any reasonable price premium Plaintiff would even seek in the lawsuit if no settlement were reached and supports granting final approval of the settlement. *Cf. Demaria v. Horizon Healthcare Servs., Inc.*, No. 2:11-CV-07298 (WJM), 2016 WL 6089713, at *3 (D.N.J. Oct. 18, 2016) (approving settlement capturing roughly 77% of potential recovery); *Schwartz v. Avis Rent a Car Sys., LLC*, No. CV 11-4052 (JLL), 2016 WL 3457160, at *11 (D.N.J. June 21, 2016) (value of the settlement minimally is approximately 50 percent of what discovery showed the damages were, and optimally more than a hundred percent of what those damages are depending on the mix of how many people opt for cash and how many opt for discounts); *In re Roundup Prods. Liab. Litig.*, 666 F.Supp.3d 1011, 1014 (N.D. Cal. 2023) (approving settlement where "[c]laimants will receive more than 20 percent of the average retail price of products they purchased"); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (approving class action settlement where consumers would receive around $14.81 per claim which represented 30% of the amount that each claimant might have been entitled to at trial); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (court found fair a common fund

136983644v.2

representing between 11 percent and 27 percent of the total potential recovery). As this Court recognized at the hearing on preliminary approval of the proposed settlement, Grande's agreement in this case is "generous." (12-13-23 Tr. at 12:21.)

Finally, the injunctive relief provided by the Settlement is a valuable public benefit. *See Campbell v. Facebook, Inc*., 951 F.3d 1106, 1123 (9th Cir. 2020) (injunctive relief requiring Facebook to post disclosures about its message monitoring practices was valuable to absent class members); *Littlejohn v. Copland*, 819 F. App'x 491, 494 (9th Cir. 2020) (consumers would derive value from injunctive relief where it provided labeling changes, which would benefit repeat customers and was not agreed to prior to the settlement); *Taylor v. Shutterfly, Inc*., 2021 WL 5810294, at *6 (N.D. Cal. Dec. 7, 2021) ("It is appropriate for the Court, in assessing whether the class is benefited by the settlement, to take into account the injunctive relief obtained, even if the Court is unable to determine the exact monetary value of such relief.").

## IV. CONCLUSION

Grande respectfully requests the Court enter the Final Approval Order and Judgment attached as Exhibit F to the parties' Settlement Agreement. Dkt. No. 25-1, Ex. F.

Dated: April 8, 2024

Respectfully Submitted,

          */s/  Christopher Fontenelli*
          Christopher Fontenelli
          Thomas J. Cunningham (*pro hac vice*)
          Daniel A. Solitro (*pro hac vice*)
          LOCKE LORD LLP
          Brookfield Place, 200 Vesey Street
          20th Floor
          New York, NY 10281-2101
          Tel: 212-4158600
          Christopher.fontinelli@lockelord.com
          tcunningham@lockelord.com
          dsolitro@lockelord.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I caused a true and current copy of the foregoing to be filed and served upon all counsel of record by operation of the court's CM/ECF system.

Dated: April 8, 2024			*/s/ Christopher Fontenelli*
					Christopher Fontenelli

136983644v.2